Boland, Appellant, *v.* Public Service Commission and Abington Electric Company.

Argued November 14, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*A. E. Hurshman,* for appellant.—There was no evidence that the rates to the public for electric current would be increased if the sale were not approved: New St. Bridge Co. v. Public Service Com., 271 Pa. 19; Director General of R. R. v. West Penn Railways Co., 281 Pa. 309; Beaver Valley Water Co. v. Public Service Commission, 271 Pa. 358.

An audit is necessary to ascertain whether the vendor company is financially able to make the necessary repairs: Mercersburg Electric Co. v. P. S. C., 76 Pa. Superior Ct. 58; V. & S. Bottle Co. v. P. S. C., 70 Pa. Superior Ct. 308.

*John Fox Weiss,* Counsel, and with him *E. Everett Mather,* Assistant Counsel, and *Daniel H. Kunkel,* for the Public Service Commission, cited: Dickson v. Public Service Commission, 89 Pa. Superior Ct. 126; West Side Electric St. Railway Co. v. P. S. C., 91 Pa. Superior Ct. 162; Wilson v. P. S. C., 89 Pa. Superior Ct. 352.

*H. C. Reynolds,* and with him *John P. Kelly,* for intervening appellees, cited: Penna. Power Co. v. P. S. C., 66 Pa. Superior Ct. 448.

Opinion by Cunningham, J., February 27, 1931:

William P. Boland, an owner of bonds issued by Northern Electric Street Railway Company, acting for himself and representing a committee of minority bondholders, appeals from an order of the Public Service Commission, approving, over his protest, an agreement for the sale by four traction companies to an electric company of a power plant, distribution system and certain transmission lines, now owned and operated by the street railway companies. There was also incidentally involved the approval of an agreement for the joint use of certain pole facilities. The commission, in issuing its certificate of public convenience evidencing its approval of the sale, was exercising the powers conferred upon it by Section 3 (c) of Article III and Sections 18 and 19 of Article V of the Public Service Company Law of July 26, 1913, P. L. 1374, and the question here involved is whether the order appealed from is reasonable and in conformity with law. A detailed statement of the corporate relations to each other of the vendor companies is not essential to the disposition of this appeal. It is sufficient for present purposes to say that these companies, The Dalton Street Railway Company, Northern Electric Street Railway Company, Scranton and Binghamton Traction Company, and The Scranton, Montrose and Binghamton Railroad Company, own, and the last named, through various leases and stock ownerships, operates, as a single system, street railway lines from Providence Square in the City of Scranton to the Borough of Montrose and from Factoryville to Lake Winola. The facilities of the traction companies involved in the proposed sale are its power plant (with reservoir site and reservation) at Brookside, Lackawanna County, substations at Clarks Summit and Nicholson, thirty-two miles of distribution lines and a high tension line between Tiffany Junction and the New York State line. Title to this property, subject to certain leases and

pledges, is in The Dalton Street Railway Company. The record indicates that there is an issue of $1,200,-000 first mortgage bonds of the Northern Electric Street Railway Company outstanding and that the capital stock of The Dalton Street Railway Company is included in the collateral securing this issue; the Miners Bank of Wilkes-Barre is the trustee in the mortgage. It may be assumed therefore that appellant, as an owner of $3,000 worth of the bonds, is a proper "party to the proceedings" and has been aggrieved if the order is unreasonable and contrary to law.

The proposed purchaser is Abington Electric Company, engaged in furnishing light, heat and power in various townships and boroughs in the counties of Lackawanna and Wyoming, and its capital stock is owned by the Republic Service Corporation. The consideration to be paid under the terms of the agreement is $250,000 and this sum is to be obtained by increasing by that amount the capital stock of the Abington Company and selling it to the Republic Corporation. Heretofore, power for the operation of the street railway system has been generated by the vendor companies at the plant now proposed to be conveyed and the surplus sold to the Abington Company for distribution to its consumers. Reasons assigned for the sale are that because of competitive conditions and changes in methods of transportation the receipts of the traction companies have been curtailed to such an extent that the power plant, through the inability of the owners to make necessary repairs, has gotten into a condition which renders it impossible for them to generate sufficient power even for their own use. On the part of the Abington Company, the representation is that the situation is now such that it must, in order to serve its customers, either purchase the existing plant or build one for itself. The proposition therefore is that the Abington Company will buy the

plant, sub-stations and distribution lines, make the necessary repairs and, in addition to supplying its consumers, sell power to the traction companies for the operation of their system. Of the consideration, $200,000 is to be paid to the trustee under the Northern Electric Street Railway Company mortgage for distribution, pro rata, to the holders of the bonds secured thereby; $40,000 is to be paid to the Scranton and Binghamton Traction Company and $10,000 to The Scranton, Montrose and Binghamton Railroad Company. Holders of more than $700,000 worth of the bonds have signified, individually or through committees, their approval of the sale. The substance of the protest is that the consideration is less than the real value of the property; that the cost to the traction companies of purchasing power will be in excess of the present cost of generating it; that the bondholders will be deprived of a valuable security for their bonds; and that the sale may lead to the abandonment of the street railway system. The findings of the commission were, briefly, to the effect that the price proposed to be paid was practically the reproduction cost new, less depreciation, of the property involved; that, after the plant has been put in good operating condition at an estimated expenditure of $72,000, "the maximum cost of energy to the traction companies will be about $.018" per k.w.h., whereas the cost to them of generating power with their dilapidated plant had been nearly twice that much; that the bondholders are not being deprived of their property at an unreasonable figure; that the traction companies are not in a financial position to make the needed improvements and repairs to the power plant; and that their earnings will probably be increased, with the result that the operation of their system can be continued and the service improved.

Our function in disposing of appeals of this nature was clearly defined in V. and S. Bottle Co. v. Pub.

Ser. Com., 70 Pa. Superior Ct. 308, 311, in which it was stated that we do not act as a second administrative commission and our inquiry is not whether the order is such as we would have made in the exercise of administrative functions, but whether it was a reasonable exercise of the discretion conferred upon the commission by the statute; nor does the statute declare what evidence shall be considered sufficient to justify action by the commission.

Upon a review of the record, we are satisfied that there was evidence to support the findings of the commission and that the administrative discretion vested in that body has not been abused in so far as the facts are concerned.

The only question of law appellant's counsel has attempted to raise is that there was no evidence before the commission that the vendor companies had complied with the provisions of an existing law—the Act of April 14, 1927, P. L. 297, requiring certain corporations desirous of selling all, or the major part, of their property to conduct an election of stockholders for or against the proposed sale—and the commission therefore had no jurisdiction to approve the agreement. This question was not raised before the commission, nor is there the slightest reference to it in the assignments of error contained in the appeal petition. For that reason, we would be justified in declining to consider it, but, aside from this, the contention is without merit. It is extremely doubtful whether the act could be tortured into having any application to this sale. Its title indicates that it is an act authorizing, inter alia, ''any natural gas company, or any manufactured gas company,......to sell......to any natural gas company, or to any manufactured gas company,......its......property or any part thereof,'' and providing the manner in which such sales shall be consummated. The language of the act seems to be broader than its title and to include

corporations organized for "the manufacture and supply of light, heat and fuel" by means other than gas, but these traction companies are not engaged in the business of manufacturing and supplying light, heat or fuel; they were incorporated for the purpose of furnishing transportation and the former sales of their surplus power were merely incidental to their main business. In any event, if the vendor companies have neglected to comply with any statutes, compliance with which is requisite to the validity of the proposed sale, approval of the agreement by the commission will not cure any invalidities in their procedure: Bethlehem City Water Company v. Pub. Serv. Com., 70 Pa. Superior Ct. 499; Wilson v. Pub. Serv. Com., 89 Pa. Superior Ct. 352, and cases there cited.

It is expressly provided by the statute that "the orders of the commission shall be prima facie evidence of the reasonableness thereof and the burden of proving the contrary shall be upon the appellant." Our conclusion is that this appellant has not met the burden thus imposed and that the assignments must therefore be dismissed.

Order affirmed.