## Beaver Valley Service Company, Appellant, v. Public Service Commission et al.

Argued April 24, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*John M. Walker,* for appellant.

*Harry H. Frank,* with him *John C. Kelley, Samuel Graff Miller* and *Richard J. Beamish,* for appellee.

*A. M. Donnan,* for intervening appellee.

OPINION BY KELLER, P. J., July 10, 1936:

Appellant operates a common carrier motor freight service between Pittsburgh and Beaver Falls, Pennsylvania. It applied to the Public Service Commission for a certificate of public convenience authorizing an

extension of this service from Beaver, by way of Vanport, Industry and Midland, to Smith's Ferry, Beaver County, Pennsylvania, a distance of a little over seven miles. Protests were filed by the Pennsylvania Railroad Company, the Pittsburgh & Lake Erie Railroad Company, and J. P. Graham, a certificated truckman.

The commission, after an extended hearing, refused the application on the ground that the extension asked for was not necessary for the convenience and accommodation of the public; that the public was already adequately served by railroad and railway express service.

To what extent there shall be competition in the intrastate transportation of freight and merchandise by common carrier is largely a matter of policy, which the legislature has committed to the Public Service Commission and the question is, for the most part, an administrative one, that must be left to the sound judgment and discretion of the commission; and its decision, if based on competent and relevant evidence, will not be disturbed by this court unless we are convinced that it is unreasonable or not in conformity with law: Collins v. P. S. C., 84 Pa. Superior Ct. 58; Marcus Hook Boro. v. P. S. C., 87 Pa. Superior Ct. 210, 212; Boland v. P. S. C., 101 Pa. Superior Ct. 102, 107; Steward v. P. S. C., 119 Pa. Superior Ct. 353, 181 A. 329.

An examination of the evidence in the record shows that there is no apparent demand for such truck service between Beaver and Smith's Ferry, or the intermediate towns. The testimony was, for the most part, limited to whether there was need for such service from Pittsburgh to Midland, a borough of from 6,000 to 7,000 inhabitants—there was no apparent demand for the return service from Midland to Pittsburgh. The applicant proposed to make three trips a day from Pittsburgh—but trans-shipping at New Brighton for Mid-

land and Smith's Ferry—the first truck leaving Pittsburgh at 2:30 o'clock A. M. and arriving at Midland about 7:00 A. M.; the second leaving Pittsburgh at 12:30 P. M. and arriving at Midland about 4:00 P. M.; and the third leaving Pittsburgh at 9:00 o'clock P. M. and arriving at Midland about 9:00 A. M. the next morning.

It was stipulated between the parties that shipments of freight in less than carload lots, received by the Pennsylvania Railroad at Pittsburgh at or before 4:00 o'clock P. M. each day, are delivered by its pick-up and delivery service in Midland the next morning. There was also evidence that the Railway Express Agency maintains service between Pittsburgh and Midland by which perishable goods shipped from Pittsburgh are delivered at Midland the same day, and general merchandise the next day. Ordinary merchandise shipped by express will also be delivered the same day, if specially requested. Two thirds of the fifty, or thereabouts, business houses of Midland have given blanket orders to the Pennsylvania Railroad freight agent to deliver all shipments consigned to them under collection and delivery tariffs; five have given similar orders for delivery of shipments within the free delivery limits of said tariffs; and fifteen have given blanket orders for delivery by the local drayman employed by the consignee.

The testimony is sufficient to support a finding that the establishment of the applicant's proposed service would be a convenience and accommodation to certain business houses in Pittsburgh and Midland; and, if the commission had seen fit to grant the application would have been sufficient to sustain its action in that respect. But it is not such as to require us to hold that the commission, in deciding that the applicant had failed to establish that the approval of the application was necessary and proper for the service, accommodation, con-

venience and safety of the public, acted unreasonably, arbitrarily or contrary to law. We do not act as a second administrative commission, nor substitute our judgment for theirs in matters relating to competition in public service, which call for the consideration of many elements and the exercise of a wide and informed discretion. The question is not whether the granting of the application will be for the convenience and accommodation of some of the public, but whether it will be for the convenience, accommodation and advantage of the public generally and considered as a whole. The commission's judgment on such a question, which is peculiarly within their experience and training, is better than ours.

The appeal is dismissed and the order of the commission affirmed.