Kulp et al., Appellants, *v.* Pennsylvania Public Utility Commission et al.

Argued April 28, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

Reargument refused October 29, 1943.

*Harold S. Shertz*, with him *Richard V. Zug*, of *Shertz & Zug*, for appellants.

*Allen Lesley*, with him *Harry M. Showalter* and *James H. Duff*, Attorney General, for appellee.

*Oscar G. Wickersham*, for Gabel, intervening appellee.

OPINION BY HIRT, J., September 9, 1943:

In 1938, Pennsylvania Public Utility Commission issued a certificate to P. H. Gabel, under the name of Lansdale and New York Motor Express, authorizing him to transport property by truck as a common carrier between points in the Borough of Lansdale, Mont-

gomery County, and all other points within 20 miles from the borough, *excluding* the city and county of Philadelphia, parts of which are within the area of the 20-mile radius. The field of operation extended to the Delaware River and was supplemented by interstate rights through New Jersey into the City of New York. On application of this carrier the limitation of the original certificate was removed on December 28, 1942, by order of the commission authorizing operation as a common carrier throughout the territory of the original certificate with the addition of the whole of the city and county of Philadelphia. The order was made over the protests of 18 competing certified carriers operating throughout the area, a number of them with large fleets of trucks, whose testimony at the hearings before the commission was to the effect that existing transportation facilities are more than adequate. This is another case (Cf. *Leaman Transportation Corp. et al. v. Pa. P. U. C.*, 153 Pa. Superior Ct. 303, in which the scope of the order of the commission goes beyond the territorial limits of the proofs; it will be modified accordingly.

The appeal involves a densely populated metropolitan area, the seat of many shippers requiring truck transportation of raw materials and products of manufacture. The normal source or destination of much of this freight is the City of Philadelphia. By extending applicant's rights generally throughout the city and county of Philadelphia the character of the authorized service was changed and prolific sources of goods for transportation, from which applicant had been barred, were opened to him.

We are not concerned primarily with the effect of the order in increasing competition among common carriers within the area. That is a question largely for the commission. *John Benkart & Sons Company v. Pa. P. U. C.*, 137 Pa. Superior Ct. 13, 7 A. 2d 588. Our inquiry is directed to whether there is substantial evi-

dence to support the findings of fact and the order of the commission. *Mod. Trans. Co. v. Pa. Pub. Util. Com. et al.,* 139 Pa. Superior Ct. 197, 12 A. 2d 458. Absolute necessity for additional service is not the test. *Arrow Carrier Corp. v. P. S. C.,* 120 Pa. Superior Ct. 570, 182 A. 711. "Accommodation" or "convenience" of the public are factors to be considered. §203(a) Public Utility Law of May 28, 1937, P. L. 1053, 66 PS 1123. It is sufficient "to show that the existing service is not of a type or character which satisfies the public need and convenience and that the proposed service would tend to correct or substantially improve that condition": *Mod. Trans. Co. v. Pa. Pub. Util. Com. et al.,* supra.

Fourteen shipper witnesses testified as to the need for additional service. Their testimony relates to six specific points on or near Bethlehem Pike, (U. S. Highway Route 309) viz: Quakertown, Telford, Hatfield, Lansdale, North Wales, Ambler, and in addition Doylestown and Oaks, two isolated points within the area. These witnesses recognized that there are other truck carriers available whose services have been satisfactory in many instances but they require additional service for one or more of the following reasons: the type of equipment adapted to heavy shipments of steel and iron is not always available; the route service of other carriers is unsatisfactory because of schedules which offer service only at inopportune times; route service of others is inadequate also because of the type and capacity of the equipment, and pick-up service is not dependable unless arranged for a day in advance; it is a convenience to deal with but one carrier for shipments throughout the area including the City of Philadelphia; there is an advantage in having a local carrier available as against dealing with a carrier through its office in Philadelphia; on occasion there is need for immediate delivery into Philadelphia of rush orders when facilities of other carriers are not available; in general these witnesses found the applicant the most

dependable of all of the carriers serving the area. This testimony meets the standard of proof, within territorial limitations. What was said in *Mod. Trans. Co. v. Pa. Pub. Util. Com. et al.,* supra, p. 203, is pertinent: "The public are interested in obtaining not only an economical but a dependable service ...... It is the duty of the commission to adjust conflicting interests so that efficient service will be available. The proper adjustments are to be made by the commission, for it is to that body that the legislature has entrusted the duty of determining who and how many shall serve a given area. It requires proof of an unusual situation before we are warranted in interfering with the duties so entrusted to the commission."

We are mindful of the principle that the evidence must establish a *public* need and not merely a convenience to individual shippers. *Perry Co. Tel. & Tel. Co. v. Pub. Ser. Com.,* 265 Pa. 274, 108 A. 659; *Beaver Val. Serv. Co. v. P. S. C.,* 122 Pa., Superior Ct. 221, 186 A. 304. But it is not an unreasonable inference that the advantages referred to by the witnesses will apply to other shippers in Oaks and Doylestown and that the need for additional facilities at all other points, referred to in the testimony, also extends generally along U. S. Highway Route 309 from Philadelphia to Quakertown.

The error in the order consists in assuming, without proof, that existing facilities are inadequate throughout the entire territory of the order. There are probably few areas anywhere which are better served with transportation facilities. Appellants state without contradiction that there are 87 cities, towns or boroughs within the distance of 20 miles of Lansdale with a population of 250 or more. From the testimony of a need as to some points it does not follow, in the absence of proof, that additional service is necessary for the accommodation or convenience of shippers generally throughout that area. The "desired flexibility in ad-

ministrative procedure does not go as far as to justify orders without a basis in evidence having rational probative force": *Consolidated Edison Co. v. National L. R. Bd.*, 305 U. S. 197, 59 S. Ct. 206. There is no basis in the evidence for the exercise of administrative discretion except as above indicated. The burden was upon applicant to establish a public need for the facilities, which he offered, throughout the extended territory of the application and only insofar as this burden has been met may his certificate be amended enlarging his field of operation. To the extent that service is authorized beyond the territorial limits of the proofs the order is extravagant, capricious and arbitrary and not in conformity with law.

The order will be modified restricting the additional service to Oaks, Doylestown, and along U. S. Highway Route 309, including adjacent points referred to in this opinion. Costs to be paid by P. H. Gabel, intervening appellee.

DISSENTING OPINION BY RHODES, J.:

The majority opinion has modified the order of the commission because, as it holds, the order [1] goes beyond the territorial limits of the proofs. If the commission is obliged to adhere literally to this pronouncement, as applied in the instant case, in the regulation of transportation by motor vehicles, it must have posi-

---

[1] "That the rights contained in the report, order, and certificate of public convenience issued in this proceeding, under date of March 14, 1938, which reads as follows: 'To transport, as a Class D carrier, property between points in the Borough of Lansdale, Montgomery County, and within twenty (20) miles, by the usually traveled highways, of the limits of said borough, excluding the City and County of Philadelphia,' be and is hereby modified and amended to read as follows: 'To transport, as a Class D carrier, property between points in the Borough of Lansdale, Montgomery County, and within twenty (20) miles, by the usually traveled highways, of the limits of said borough, including the City and County of Philadelphia.'"

tive evidence of the effect that the granting or refusing of a certificate may have on the people in every square mile, or possibly less, of the territory sought to be served by an applicant. Such requirement is neither reasonable nor in harmony with the declared policy of the legislature "to regulate ...... the service of common carriers by motor vehicle and forwarders in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in such service, and among such carriers and forwarders in the public interest; to promote safe, adequate, economical, and efficient service by common carriers by motor vehicle and forwarders, and just and reasonable rates therefor, without unjust discrimination, and unfair or destructive practices; to improve the relations between, and coordinate the service and regulation of, common carriers by motor vehicle, forwarders, and other carriers; to develop and preserve a safe highway transportation system properly adapted to the needs of the commerce of the Commonwealth of Pennsylvania and insure its availability between all points of production and markets of this Commonwealth": Section 801, art. 8, of the Public Utility Law, Act of May 28, 1937, P. L. 1053, 66 PS §1301. In section 203, art. 2, of the Public Utility Law, 66 PS §1123, it is also provided that the commission, in granting a certificate of public convenience, "shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public ......"

The result will be, as the commission says, to reduce the regulation of motor carriers to an exact science, to defeat the very aims of the legislature in regulating motor vehicles, to block the commission from taking that broad view of the motor carrier industry that the legislature has desired taken, to put an end to limited competition, and to give the existing carriers the status of monopolies.

In *Horn's Motor Express, Inc., v. Pa. P. U. C.,* 148 Pa. Superior Ct. 485, 26 A. 2d 346, we said that where the commission makes findings of fact after full compliance with the procedural requirements of the law, and its order is not in violation of constitutional rights, the sole inquiry of the appellate court is whether there is substantial evidence with rational probative force to support the findings. See, also, *Alko Express Lines v. Pa. P. U. C.,* 152 Pa. Superior Ct. 27, 30 A. 2d 440. An examination of the record will clearly disclose that the commission has made findings of fact after full compliance with the procedural requirements of the law, and that the applicant has met the burden of proof by showing that the existing service within the area is not of a type or character which satisfies the public need and convenience, and that the proposed service to and from Philadelphia would tend to correct or substantially improve that condition. The commission in its supplemental report and order affirming modification of applicant's certificate of public convenience said that "we do not believe it would be to the accommodation and convenience of the public to long continue the existing situation. We have eliminated these objectionable factors, not by interjecting a new carrier into the area, but by placing an existing carrier on a parity with those operating within the area. We believe this to be a proper adjustment of conflicting interests, making available a more efficient service which will result in an accommodation and convenience to the public; thus providing shippers within the area with a local carrier equipped with facilities for which they have a need, affording them an opportunity to fully utilize applicant's very satisfactory schedules of and arrangements for deliveries and pick-ups, and with certificated rights sufficient to render a complete service."

Fourteen shipper witnesses from widely separated parts of applicant's *existing* territory appeared and testi-

fied as to the need for granting applicant the right to enter the city and county of Philadelphia. They show a general necessity in the area served by applicant for such additional service to be rendered through the modification of applicant's certificated rights. Proof of such necessity or proof that the granting of the application will be for the convenience, accommodation, and advantage of the public generally and considered as a whole is sufficient. *Beaver Valley Service Co. v. P. S. C. et al.*, 122 Pa. Superior Ct. 221, 225, 186 A. 304 The testimony of these witnesses was, in my judgment adequate to support the finding of the commission "that the existing service and facilities are inadequate and that the approval of the proposed modification is necessary and proper for the service, accommodation, convenience or safety of the public." It would be impossible to guess under the theory of the majority opinion what proof would be necessary to sustain the findings and order of the commission in the present case or any similar case. On the evidence, which I think supports the findings and order of the commission, it was proper for the commission to exercise its administrative discretion in accordance with the powers delegated to it by the legislature. See *Modern Transfer Co., Inc., v. Pa. P. U. C. et al.*, 139 Pa. Superior Ct. 197, 202, 12 A. 2d 458.

I would affirm the order with the limitation of additional service to and from Philadelphia and applicant's original certificated area, as this appears to have been the extent of the additional rights contemplated and at issue.

OPINION BY HIRT, J., October 29, 1943:

The original order, literally construed authorized transportation within the area, only where the Borough of Lansdale was either the point of origin or the destination of a shipment. The Commission however and

P. H. Gabel both construed the order to permit carriage *between any two points* within 20 miles of the Borough, excepting the City of Philadelphia. A similar construction was placed on the final order of the Commission when the exception was removed. Our order as to permitted additional service therefore is within the general intent of the Commission's order.

The Commission in its petition for reargument contends that we in effect directed the delivery of a Class A certificate to Gabel whereas the Commission intended that Gabel should remain a Class D carrier with limited rights.

Carriers are classified by rules of the Commission. A part of the additional service which we authorized is over a designated highway route. But while under the Commission's classification a carrier so operating may be a Class A carrier with incidental rights enumerated in rule 202 it does not follow under the Commission's rules that every carrier along a designated route is a Class A carrier. Rule 202 provides that, among others, the right of interchange shall be incident to transportation over a designated route "unless otherwise provided." A Class A certificate could be made adaptable in this case to that part of the additional service by reciting the restrictions applicable to it. Under the Commission's rules however a Class D certificate is more appropriate, enumerating all rights under the Commission's order as modified by us. Rule 205 provides: "The rights and limitations of holders of Class D certificates will be stated in the certificates. Certificates of this kind will be issued where the rules applying to the other classes with reasonable modifications would not permit service of the kind which the applicant proposes to furnish and which the Commission approves."

We see no reason why the Commission cannot issue a certificate without violence to any of its rules limiting the service to that specifically authorized by our order.

Petition for reargument refused.