Garner et al., Appellants, *v.* Pennsylvania Public Utility Commission.

Argued November 17, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*LeRoy S. Maxwell,* with him *C. V. Graf, Rhoads, Sinon & Reader* and *Maxwell & Good,* for appellant.

*Daniel W. Long,* with him *Wingerd & Long,* for appellant.

*Frank A. Sinon,* with him *Rhoads, Sinon & Reader,* for appellants.

*Edward Munce,* Assistant Counsel, with him *Thomas M. Kerrigan,* Assistant Counsel and *Lloyd S. Benjamin,* Counsel, for Public Utility Commission, appellee.

*William S. Bailey,* with him *G. Thomas Miller* and *Storey, Bailey & Rupp,* for applicant, intervening appellee.

OPINION BY ERVIN, J., January 14, 1955:

These appeals deal with the application of Merchants Delivery, Inc. (hereinafter called appellee) filed with the Commission on October 13, 1949 seeking amendment to its common carrier certificate, originally issued October 29, 1935 and subsequently modified and amended, which granted the right to transport merchandise from freight stations in the City of Harrisburg, Dauphin County, to stores in the same city, and from merchants in the City of Harrisburg to points within seventy-five miles of the limits of said city by the usually traveled highways, and vice versa, provided that nothing but returned goods shall be transported back to Harrisburg; and subject to a condition which limits the transportation to such merchandise (with the exception of typewriters and automobile tubes and tires) as does not exceed fifty pounds in weight per shipment. By this present application the appellee sought an increase of the weight limitation from fifty pounds to one hundred fifty pounds. Protests to this application for amendment were filed by certain competing carriers (hereinafter called appellants).

The Commission held hearings on January 26, 1950 and March 6, 1950 and by order dated February 13, 1951 dismissed the application for lack of necessity. Prior thereto, in August 1950, the appellee had secured, without protest, an amendment permitting it to carry merchandise from fifty to one hundred fifty pounds in weight in an area lying within a ten-mile radius of the City of Harrisburg. On February 27, 1951 appellee filed a petition for a rehearing, which the Commis-

sion granted on April 30, 1951. Further hearings were held on June 1, 1951, April 7, 1952, May 26, 1952 and June 16, 1952.

On September 8, 1953 the Commission entered an order in short-form, rescinding its order of February 13, 1951 and granting the additional rights sought by the appellee. The appellants appealed to the Superior Court. On October 22, 1953 the Commission petitioned this Court for remission of the record so that specific findings of fact could be made and an order based thereon entered in lieu of the prior short-form order. This Court, on November 9, 1953, remitted the record as requested. On February 8, 1954 the Commission entered the long-form order from which these appeals were taken by the appellants.

The appellee has twelve ¾ ton closed pick-up delivery trucks which are used to service between 350 and 360 firms in the City of Harrisburg. The twelve trucks start their routine pick-up rounds at 8:00 A.M. each week-day morning, making the last regular pick-up for same day deliveries outside of Harrisburg by about 10:30 A.M. The appellee also makes some emergency pick-ups in the afternoon. The trucks return to appellee's central freight station after the morning pick-up, where the cargo is sorted and reloaded on the trucks; then they fan out making deliveries within their certificated area over approximately eleven routes. If the shipment is picked up on the morning circuit, and it is to be delivered to a point served by the appellee on that day, there is same day delivery within seven hours to delivery points at the extremity of appellee's area and within a shorter time to points less remote from Harrisburg.

The appellants first argue that the commission's order of January 28, 1952, allowing evidence taken at prior hearings to be incorporated in the record in the

rehearing, was erroneous. The only provision of the Public Utility Law pertaining to rehearing is as follows: "After an order has been made by the commission, any party to the proceedings may, within fifteen days after the service of the order, apply for a rehearing in respect of any matters determined in such proceedings and specified in the application for rehearing, and the commission may grant and hold such rehearing on such matters. No application for a rehearing shall in anywise operate as a supersedeas, or in any manner stay or postpone the enforcement of any existing order, except as the commission may, by order, direct. If the application be granted, the commission may affirm, rescind, or modify its original order. Any order so made after such rehearing shall have the same force and effect as an original order." Act of May 28, 1937, P. L. 1053, art. X, §1006, 66 PS §1396. There is no express provision in the code requiring the hearing to be de novo. The Commission is vested with full power after the rehearing to amend, rescind or modify its original order. The Commission's act rescinding the original order was within the power expressly granted. Appellants argue that a rehearing before an administrative agency is substantially identical to a new trial before a court of common pleas and must be de novo. With this we cannot agree. In the common pleas the jury has been discharged and a new jury must be impaneled, usually at a subsequent term, to hear the new trial. An administrative commission remains substantially the same and this is especially true because of the provision in the law requiring the application for the rehearing to be made within fifteen days after the service of the original order. It has been the practice of the Commission to incorporate the record of prior hearings at a rehearing. *Wyoming Valley Motor Club v. Delaware & Hudson et al.*, 11 Pa.

P. U. C. 118, 120 (1931); *Applications of Lafayette Bridge Corp.*, 12 Pa. P. U. C. 542 (1934). The Commission is given the express power to rescind or modify its original order and to do this it necessarily must reconsider that which was previously presented to it. So far as our research discloses, this question is of first impression in this state. It has been considered by the Supreme Court of New Jersey in *Central Railroad Co. of N. J. v. Dept. of Public Utilities*, 89 PUR NS 394, 401; 7 N. J. 247; 81 A. 2d 162 (1951), wherein it was said: "We are now presented with the question whether upon a formal rehearing an administrative agency, vested with powers partaking of both legislative and judicial attributes, should consider the record of the original hearing as well as the evidence submitted to it during the course of the rehearing.

"There is no doubt in our minds that the Board [of Public Utility Commissioners] *must* consider the entire record, including the records of both the original hearing and the rehearing." (Emphasis added)

The appellants argue that they were greatly prejudiced by the action of the Commission in considering the "incorporated" testimony of witnesses Darlington, Blessing, Chronister, Feirman, Sunkle, Mariano and Butler without the right of cross-examination as to changed conditions. In its order of January 28, 1952 the Commission said: "In the course of the three hearings on the application . . . 12 witnesses appeared and testified in support of the application and 12 witnesses opposed it. The testimony of these witnesses covered 450 pages of transcript. To require all of these persons to appear again and testify at length would needlessly inconvenience the witnesses and unnecessarily prolong the proceeding. If conditions have changed since the witnesses last testified in regard to the application, these or additional witnesses with knowl-

edge of the changed condition can bring the record up to date by presenting material testimony or evidence relating to such changes. The opportunity to do so will be available to protestants as well as to the applicant and, therefore, neither the applicant nor the protestant will be afforded an unwarranted advantage or be subjected to an unfair disadvantage." The principle requiring a testing of testimonial statements by cross-examination has always been understood as requiring, not necessarily an actual cross-examination but merely an opportunity to exercise the right to cross-examine if desired. 5 Wigmore on Evid., Sec. 1371, 3rd ed. See also *Com. v. Sweeney,* 283 Pa. 520, 525, 129 A. 577. The testimony of the former hearing is not excluded by the hearsay rule. 5 Wigmore on Evid., Sec. 1370, 3rd ed., wherein it is said: "The Hearsay rule excludes testimonial statements not subjected to cross-examination (*ante,* §1362). When, therefore, a statement has *already been subjected to cross-examination* and is hence admitted—as in the case of a deposition or testimony at a former trial,—it comes in because the rule is satisfied,—not because an exception to the rule is allowed. The statement may have been made before the present trial, but if it has been already subjected to proper cross-examination, it has satisfied the rule and needs no exception in its favor."

In the interest of saving time for all parties concerned, the record of the prior hearing should be admitted at the rehearing unless substantial harm will be done to any of the parties. We do not believe any of the parties could have been harmed in view of the Commission's order in this case, and practice generally, of permitting examination and cross-examination of any of the prior witnesses, and also of new witnesses, for the purpose of showing any new or changed conditions. Furthermore, the legislature, in granting the

opportunity for a rehearing, must have intended to give the Commission an opportunity to change its mind. The language permitting the Commission to "affirm, rescind, or modify its original order" strengthens this conclusion. It is only reasonable to suppose that the legislature would have wanted the Commission to have before it for consideration the record upon which its original order was based. How else could it act intelligently in the matter? How else could it reconsider its original order without reconsidering the facts upon which it was based? It seems to us that a reconsideration is especially indicated where five Commissioners, men with considerable experience and skill in this field of activity, divide three to two. The fact that the legislature limited the time within which to apply for a rehearing to "fifteen days after service of the order" also serves to reinforce the conclusion that a review of the original record was intended. The situation is somewhat analogous to an application for a reargument, made to the Supreme or Superior Court, before the record is returned to the lower court (the record being retained for a period of ten days from the date of the final order). All of us are of the opinion that the Commission did not commit error in permitting the record of the original hearing to be admitted at the rehearing.

It is also argued that the authority granted to appellee will authorize acts beyond its charter authority. The purpose as expressed in the charter is as follows: "Transporting and delivering for firms, corporations and individuals *with whom it may severally contract,* goods, wares and merchandise, by means of motor vehicles, to and from points within a radius of 75 miles of the City of Harrisburg. . . ." (Emphasis added) Appellants argue that the words "with whom it may severally contract" require it to be found that the appel-

lee was incorporated as a contract carrier and that common carriage is ultra vires of its charter purpose. Appellee was incorporated in 1934 when the 1913 Public Service Co. law was in effect. The then Public Service Commission had no jurisdiction over contract carriers. Such jurisdiction was conferred on the present Commission by the Public Utility Law of 1937. In 1934 appellee was certificated as a common carrier by the Public Service Commission. The corporate powers of the appellee were never questioned thereafter until 1950 at a hearing in this proceeding. In *Merchants Parcel Delivery, Inc. v. Pa. P. U. C.*, 150 Pa. Superior Ct. 120, 129, 28 A. 2d 340, we said: "Differentiating between common and private (contract) carriers, this court held that the test is whether or not such person holds himself out expressly or impliedly, as engaged in the business of supplying his product or service to the public, as a class, or to any limited portion of it, as contradistinguished from holding himself out as serving or ready to serve only particular individuals. Brink's Express Co. v. Public Service Commission et al., 117 Pa. Superior Ct. 268, 274, 178 A. 346; Masgai v. Public Service Commission et al., 124 Pa. Superior Ct. 370, 188 A. 599." By its charter appellee is authorized to render service for all the firms, corporations and individuals and the record shows that for twenty years it has solicited business of all of them in Harrisburg and has not held itself out as serving or ready to serve only particular individuals. Lapse of time and change of circumstances, resulting in hardship and injustice, make this case particularly susceptible to the doctrine of laches. Many customers have come to rely on the services of the appellee. The appellee has invested considerable sums of money in equipment and personnel organization and it would be highly inequitable at this late date to per-

mit the doctrine of ultra vires to strike down these important property rights. We adopt the language of the Commission wherein it said: "Then too, although a formal contract may, but is not usually entered into by common carriers and shippers, there is, nevertheless, a contractual relationship between carrier and shipper every time a shipper offers property for transportation and a carrier undertakes to transport it. Therefore, the reference to contracts contained in the purpose clause here considered should not of itself and at this late date now serve to bar the applicant corporation from providing a class of service which it has provided since the beginning of its corporate existence."

We therefore conclude that the Commission's order did not authorize an ultra vires act by the appellee.

We will now consider the principal point raised in these appeals. In granting the certificate, the Commission complied with the Public Utility Law and found that ". . . the granting of the rights sought by applicant is necessary and proper for the service, accommodation, and convenience of the public." Sec. 203 of Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1123. Under Sec. 1107 of the Public Utility Law as amended, 66 PS §1437, "The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation of constitutional rights." The Commission having found as above indicated, our inquiry, as has been stated many times by this Court, is limited to a determination of whether there is substantial evidence to support the findings of the Commission.[1]

---

[1] *Ruettger et al. v. Pa. P. U. C.*, 164 Pa. Superior Ct. 388, 392, 64 A. 2d 675; *Hutchison v. Pa. P. U. C.*, 168 Pa. Superior Ct. 319,

We do not sit as a super-administrative board. *Pittsburgh & Lake Erie R. R. Co. v. Pa. P. U. C.*, supra. Where the evidence presents a definite conflict as to a public need for an applicant's service in an area, it is for the Commission to determine whether the available equipment and facilities are sufficient and adequate to meet the public demands, and the extent of competition to be allowed is largely an administrative question within the sound discretion of the Commission. *Kulp v. Pa. P. U. C.*, 153 Pa. Superior Ct. 379, 381, 33 A. 2d 724; *Ferrari v. Pa. P. U. C.*, 163 Pa. Superior Ct. 24, 29, 60 A. 2d 602. Absolute necessity for additional service is not the test, although "accommodation" or "convenience" of the public are factors to be considered. *Ruettger et al. v. Pa. P. U. C.*, supra. It is sufficient to show that the existing service is not of a type or character which satisfies the public need and convenience and that the proposed service would tend to correct or substantially improve that condition. *Kulp v. Pa. P. U. C.*, supra.

The appellants contend that the Commission has ignored (1) the adequacy of the services being rendered by them and (2) that the service proposed by appellee was not shown to be necessary by evidence having rational, probative force. Appellee, in the original hearings, produced at least six witnesses and in the rehearings at least four witnesses who were owners or men who were in charge of delivery service for retail and wholesale businesses located in the City of Harrisburg. Without referring to their individual testimony

---

321, 77 A. 2d 744; *Pittsburgh & Lake Erie R. R. Co. v. Pa. P. U. C.*, 170 Pa. Superior Ct. 411, 415, 85 A. 2d 646; *Follmer Trucking Co. v. Pa. P. U. C.*, 171 Pa. Superior Ct. 75, 80, 90 A. 2d 294; *Zurcher v. Pa. P. U. C.*, 173 Pa. Superior Ct. 343, 347, 98 A. 2d 218; *Leaman Trans. Co. v. Pa. P. U. C.*, 175 Pa. Superior Ct. 553, 556, 106 A. 2d 901.

(which was done with considerable detail in the Commission's order of February 8, 1954) it is clear that these people desired to have same day delivery whenever possible and some of them testified that not only is appellee's scheduled service often faster than appellants' but also that appellee calls for shipments promptly, whereas appellants frequently are tardy in responding to their requests for service. Typical of this testimony is that presented by Richard W. Rowe, who was Superintendent of Delivery for Pomeroy's Department Store and who had been connected with Pomeroy's for thirty years. This store ships between 12,000 and 15,000 packages per month. He said that in the preceding week he had phoned Hartman (one of the appellants) four times to make one pick-up on a rug (weighing seventy-five to eighty pounds) for Pottsville. When Hartman at last picked up the rug on Friday the driver told witness it would be delivered in Pottsville on Saturday, "But I got a call Saturday afternoon that the party hadn't received it as yet." This witness also testified that from time to time he called York Motor and other express companies and that they ignore his calls. He testified that he called Daily Motor Express three times, May 21, 22 and 23, 1951, before a shipment was picked up. He testified that in May 1951 Masser (one of the appellants) picked up an eighty-five pound shipment to be delivered along the Gettysburg Pike "but did not deliver it for three or four days." He testified that he used appellee's service "for one reason: for better service."

Mr. Lehrman of A. J. Lehrman & Sons, dealers in wholesale paper and janitor supplies, said "I am not interested in what the rate costs to ship by any carrier. I am interested in getting the merchandise there fast"; that in November 1951 he had to phone Daily Motor for three days to pick up one shipment; that he

had used Daily Motor for shipments of less than fifty pounds until he discovered that Merchants gave better service in such shipments. This witness also testified that in 1951 he used Daily Motor Express about thirty-six times and that the best pick-up he got was two to three days.

Mr. Chronister of Brenner Motors testified that "We get faster service" from Merchants "because they leave earlier." He said he called Horn's Motor Express and asked them about it and they said "they can't promise same-day delivery."

The appellants answered this testimony by placing on the stand the men in charge of their operations who, without referring to their individual testimony, generally testified that they had not received complaints as to their service from these witnesses or any other persons and that they were rendering prompt and efficient service. Some of the complaints were given to men on the trucks or people who answered the phone and it is entirely possible that these complaints were not communicated to the top men. The credibility of witnesses is a matter entirely for the Commission. *Zurcher v. Pa. P. U. C.*, supra.

We have read the entire record in this case and we are convinced that there was competent and adequate testimony to justify the Commission's order. What was said in *Follmer Trucking Co. v. Pa. P. U. C.*, supra, at page 84, is particularly applicable to this case: "This is another case in which the application as approved does not extend the area of applicant's operations but merely extends its operating rights within an area it is already serving. Pertinent, therefore, is the language of this Court in Mod. Trans. Co. v. Pa. P. U. C., 139 Pa. Superior Ct. 197, 203-204, 12 A. 2d 458: 'The order of the commission has not extended the area of operations of the particular carrier but

has permitted it to serve persons whose doors this utility passed in its former operations and has permitted the carrier to give additional service within the same area and on the same routes to those at whose doors they were actually stopping but whose demands they could only satisfy in part. . . . We have no doubt the commission gave due weight to the fact that York Motor was passing many points where at little additional cost it might furnish more service at less average cost and at the same time accommodate the public. To promote such economies is one of the duties of the commission.' "

What was said in *Leaman Trans. Co. v. Pa. P. U. C.*, supra, at page 558, is also particularly applicable in this case: "As we stated in Zurcher v. Pennsylvania Public Utility Commission, supra, 173 Pa. Superior Ct. 343, 349, 98 A. 2d 218, 221: 'No particular type of evidence is required; the only requirement is that the evidence as a whole be legally sufficient to support the order of the Commission. Pittsburgh & Lake Erie Railroad Co. v. Pennsylvania Public Utility Commission, supra, 170 Pa. Superior Ct. 411, 420, 85 A. 2d 646. This is met by showing that the proposed service is reasonably necessary for the accommodation or convenience of the public, or by establishing that existing service does not satisfy the public need and that the proposed service would tend to correct or substantially improve that condition. Kulp v. Pennsylvania Public Utility Commission, 153 Pa. Superior Ct. 379, 382, 33 A. 2d 724. Absolute necessity for the additional service is not a requisite, and it is not necessary that applicant establish a present demand for the service in every square mile of the territory certificated; proof of necessity within the area generally is sufficient.'

Appellants' witnesses complained that the granting of Seaboard's application would produce greater competition; that a substantial portion of their equipment was idle; and that such competition would not be in the public interest. The evidence was therefore conflicting on the need for the proposed service between any two points in the one hundred fifty mile area. In such case, we have said: '. . . it is for the Commission to determine whether the available equipment and facilities are sufficient and adequate to meet the public demands, and the extent of competition to be allowed is largely an administrative question within the sound discretion and judgment of the Commission': Zurcher v. Pennsylvania Public Utility Commission, supra, 173 Pa. Superior Ct. 343, 348, 98 A. 2d 218, 220."

The order of the Commission is affirmed.