Philadelphia-Pittsburgh Carriers, Inc. et al., Appellants, *v.* Pennsylvania Public Utility Commission.

Argued November 12, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*R. H. Shertz*, with him *Paul F. Barnes*, and *Shertz, Barnes & Shertz*, for appellants.

*Jerome Solomon*, for appellant.

*James W. Hagar*, with him *McNees, Wallace & Nurick*, for appellant.

*Louis J. Carter,* Assistant Counsel, with him *Edward Munce,* Assistant Counsel, and *Thomas M. Kerrigan,* Acting Counsel, for Pennsylvania Public Utility Commission, appellee.

*Samuel P. Delisi,* with him *Henry M. Wick, Jr., John A. Vuono,* and *Delisi and Wick,* for applicant, intervening appellee.

*Carl Helmetag, Jr.,* with him *Paul R. Duke,* for railroad, intervening appellee.

OPINION BY HIRT, J., February 11, 1958:

A partnership operating as Pittsburgh Stores Fast Freight applied to Pennsylvania Public Utility Commission for authority to operate as a freight *forwarder* for shipment by railroad, motor vehicle, by water or air, between points in the three counties of Philadelphia, Bucks and Northampton, and all points in 13 other counties in Western Pennsylvania including Allegheny County. (All italics throughout this opinion will be ours). The partnership, at the first hearing on September 4, 1952, amended the application by stipulating: "1. Any certificate of public convenience issued in this proceeding *shall be limited* to the right and privilege of performing service *as a freight forwarder* as defined in Section 2(11) of the Public Utility Law [as amended, 66 PS §1102]. 2. Any such right and privilege shall not authorize applicants to operate any motor vehicle equipment over public highways in performance of the freight forwarder service to be provided. 3. To provide the actual transportation of shipments moving in freight forwarder service in intrastate commerce between points in Pennsylvania, applicants will utilize only the services of carriers au-

thorized by this Commission." Twenty-four carriers, principally trucking companies, had filed protests to the application and their witnesses were heard at four hearings before the Commission. The testimony of these protestants together with that of the applicant at these hearings comprise 320 pages of the present printed record in this appeal. On July 26, 1954, the Commission by order, dismissed the application "for lack of necessity". The Pennsylvania Railroad, subsequently, on its petition in support of the application was allowed to intervene and on motion, the Commission reopened the proceeding. On August 11, 1955, the petitioners again amended their application by further limiting its scope thus: "6. The freight forwarder service which applicant proposes to perform is as follows: The transportation of property as a freight forwarder for shipment by railroad or motor vehicle from points in the County of Philadelphia to points in the County of Allegheny." Further hearings were held on the reopened application in Pittsburgh during the month of August 1955, after notice to all protestants and other parties in interest.

In its final order of April 22, 1957, the Commission, following a review of the testimony, stated: "We find the applicant has met the burden and that the grant of this application is necessary and proper for the service, accommodation and convenience of the public. After consideration of all the evidence, this matter having been duly heard and submitted by the parties and full investigation of the matters and things involved having been had: THEREFORE, *It Is Ordered*: That the order of the Commission of July 26, 1954, refusing the application of A. Kohrman, I. J. Sheer and J. A. Feldmeier, copartners, trading and doing business as Pittsburgh Stores Fast Freight, be rescind-

ed and that the application, as amended, be and is hereby approved, limited to the following right: To operate as a forwarder for the transportation of property (excluding commodities in bulk in tank vehicles) via railroad or motor vehicle from points in the County of Philadelphia to points in the County of Allegheny; . . . [and that the operation, subject to conditions with which we are not concerned] is necessary or proper for the service, accommodation or convenience of the public." Thus, the approved service was limited to forwarder service as an adjunct to one-way freight transportation from Philadelphia to points in Allegheny County. These are the appeals of six of the protestants who have intervened in the proceeding and who seek to set aside the order.

In §801 of the Public Utility Law, as established by the basic Act of May 28, 1937, P. L. 1053, 66 PS §1301, under the heading "Declaration of policy" it, in part, is said: "It is hereby declared to be the policy of the Legislature to regulate in this act the service of common carriers by motor vehicle and *forwarders* in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in such service, and among such carriers and *forwarders* in the public interest; to promote safe, adequate, economical, and efficient service by common carriers by motor vehicle and *forwarders,* and just and reasonable rates therefor without unjust discrimination, and unfair or destructive practices . . ." The statement of policy also recognized the necessity for Commission regulation of the various phases of the "service of common carriers by motor vehicle, *forwarders* . . ." or other agencies and facilities, because "closely interwoven and interdependent." By §2(11) of the Public Utility Law, supra, a freight forwarder is de-

fined thus: "'Forwarder' means any person or corporation not included in the terms 'motor carrier' or 'broker', as herein defined, who or which issues receipts or billings for property received by such person or corporation for transportation, forwarding, or consolidating, or for distribution by any medium of transportation or combination of media of transportation, other than solely by motor vehicle."

The evidence before the Commission disclosed numerous points in Philadelphia County from which forwarder traffic for Allegheny County would originate. The potential shipments covered a wide range in the character of the commodities and in their weight, varying from 20 to as much as 5000 pounds. The applicant undertook to handle any commodity coming within the original classification on file with the Commission. Although a forwarder has the status of a common carrier (§801 of the Act of May 28, 1937, P. L. 1053, 66 PS §1301) and in the proposed service the applicant assumed the responsibility for the transportation of freight from point of origin to destination, yet it was contemplated that freight would be transported not by this applicant but in every instance by certified common carriers operating under authority of the Commission. Applicant undertook to receive, assemble, and consolidate shipments of freight for Allegheny County at its concentration point located in the Shackamaxon Station of The Pennsylvania Railroad Company in Philadelphia County; the proposed service to the public normally would start at this concentration point. On request of a shipper the applicant as forwarder would arrange for pick-up by a local certified carrier but only for shipments originating within the County of Philadelphia. Freight brought to its concentration center however, by shippers from

adjacent counties would be accepted by applicant and would be handled as forwarder on bills of lading originating at Philadelphia. The function of a forwarder is to consolidate pieces of freight of individual shippers into carload or truck-load lots which he offers to a railroad or a motor carrier for movement to the destination area. In this proceeding the applicant undertook to perform that service and, on arrival of the consolidated shipments at its Pittsburgh terminal, to break the bulk and to distribute the freight and make deliveries to the several consignees by means of the services of local certified motor carriers. No authority was sought to operate equipment in the applicant's name, but as forwarder the applicant would be responsible for the safe transportation of the property moving in its service from point of receipt to point of delivery. Thus a common carrier liability would be assumed.

Our function on this appeal (under §1107 of the Public Utility Law of May 28, 1937, as amended, 66 PS §1437) is limited to a determination of whether there is substantial evidence to support the findings of the Commission. The burden on an applicant is met by showing that the proposed service is reasonably necessary for the accommodation or convenience of the public. "Absolute necessity for additional service is not the test, although 'accommodation' or 'convenience' of the public are factors to be considered. Ruettger et al. v. Pa. P. U. C., supra, [164 Pa. Superior Ct. 388, 392, 64 A. 2d 675]. It is sufficient to show that the existing service is not of a type or character which satisfies the public need and convenience and that the proposed service would tend to correct or substantially *improve* that condition": *Garner et al. v. Pa. P. U. C.,* 177 Pa. Superior Ct. 439, 450, 110 A. 2d 907; *Mod.*

*Trans. Co. v. Pa. P. U. C.*, 139 Pa. Superior Ct. 197, 12 A. 2d 458; *Kulp v. Pa. P. U. C. et al.*, 153 Pa. Superior Ct. 379, 382, 33 A. 2d 724; *Furst v. Pa. P. U. C.*, 184 Pa. Superior Ct. 330, 134 A. 2d 435.

Representives of ten important business establishments in the Allegheny County area including a number of large department stores testified in effect that the proposed service would eliminate a deficiency in the existing service. The order of the Commission fairly summarizes their testimony in this language: "Executives, whose duties included traffic management, receiving, marketing, freight handling and warehousing, testified on behalf of the following merchants: Kaufman's Department Store, Vanity Luggage Company, Rosenbaum Company, Harris Stores, Spear and Company, Bernstein and Mann, Standard Auto and Radiator Supply Company of Pittsburgh, Boggs and Buhl's Inc., Papercraft Corporation and Gimbel Brothers. These Pittsburgh firms include department stores, a wholesale luggage dealer, a large retailer of home furnishings, a millinery house, a dealer in automotive accessories, radio tubes and toys, a manufacturer of paper products and related items. (A manufacturer and distributor of mine safety equipment, a distributor of store display fixtures, and a distributor of toys and games testified at the rehearing.) The shipments these companies receive range in size from 20 to 5,000 pounds. They receive merchandise from Philadelphia and other eastern Pennsylvania cities. These firms presently use in various degrees all forms of common carriers carrying freight to Pittsburgh including air freight, bus lines, and railway express, and even parcel post. For the faster service they had higher costs which they wanted to avoid. Several presently use the [interstate forwarder] service of the applicant from

New York to Pittsburgh and found it dependable and satisfactory. These firms receive shipments . . . from Philadelphia three or four times a week on the average. They all had particular problems concerning their need for consolidation of shipments, and the need for easier means of tracing lost or delayed shipments . . . scattered among several carriers. Primarily, their need was for increased speed of delivery by overnight or second day delivery. For the most part these witnesses believed the present direct motor-carrier service was not what they wanted and needed. Their needs for speed and greater dependability arose from production line requirements, store openings and the necessity of having merchandise in the store for scheduled advertised sales. None of them knew of or used any [other] forwarding service from Philadelphia. They testified that they needed one; they preferred it to direct service. Certain witnesses were using a consolidator in Philadelphia but the service was poor and not dependable."

It should be noted that two of the appellants, Philadelphia-Pittsburgh Carriers, Inc., and Highway Express Lines Inc., in addition to certification as common carriers were authorized to supply forwarder service. But throughout the years they have never exercised their certified rights as forwarder and they cannot be regarded as preempting the field simply by nonuser. As stated by the Commission, "Consideration cannot be given to a carrier who has not been giving the public service to which it is reasonably entitled, until another enterprising carrier seeks to render competitive service in the manner demanded by the shipping public": *Hall's Motor Tran. Co. v. Pa. P. U. C. et al.*, 150 Pa. Superior Ct. 60, 27 A. 2d 428. And the offer of these carriers made at the hearings in this case to supply the service of a forwarder is no bar to

the validity of the present order. No certified forwarder with the status of a common carrier in law has the right to a guaranty of protection from competition. And the extent of competition to be allowed is generally an administrative question within the sound discretion of the Commission. Cf. *Noerr Motor Freight Inc. v. Pa. P. U. C.*, 181 Pa. Superior Ct. 322, 331, 124 A. 2d 393; *Zurcher v. Pa. P. U. C.*, 173 Pa. Superior Ct. 343, 348, 98 A. 2d 218. That discretion certainly has not been abused in the determination of this case.

After reopening the proceeding after the first order of July 26, 1954, the Commission held further hearings but in its final disposition of the case, considered the testimony taken at all hearings from the very inception of the proceeding. The appellants suffered no prejudice from the failure of the Commission to compel the reappearance of the witnesses to repeat their testimony given at prior hearings. Cf. *Garner et al. v. Pa. P. U. C.*, supra, p. 446. And this is especially so because their original testimony was in support of an application for broader rights than ultimately before the Commission under the applicant's final amendment of its petition.

The service of a forwarder has a distinctive character. It does not supplant existing line haul or over-the-road transportation service but is complementary to it. By consolidation methods the forwarder improves the quality of that service in the interest of both consignor and consignee. The forwarder is a specialist who provides an added service to those dependent upon common carriers for the delivery of package freight. His function is to consolidate pieces of package freight into full carload or truckload lots with resulting faster delivery and often in reduction of traffic costs. Items of package freight when handled as

separate shipments create problems, according to the testimony, among them: The practical difficulty confronting every individual carrier of assembling a sufficient volume of freight from various shippers to justify carrier service and delivery to a destination area each day; irregularities may occur in the service for this reason. There is also the difficulty of tracing shipments when lost or when delivery has been delayed.

The advantages of a forwarder service in operation, under our Public Utility Law, has been lacking in Pennsylvania, but such service is no stranger to shippers, merchants and others in this State. The forwarder and the service rendered by him has been recognized by Congress and as regulated by the Interstate Commerce Commission has become an integral part of the transportation system of the nation and has been used in the interest of consignees of freight in Pennsylvania by carriers in interstate commerce.

Upon ample supporting testimony, the Commission has decided that the contemplated forwarder service is proper for the service, accommodation and convenience of the public and in so concluding the Commission is not chargeable with error of law; no constitutional question is involved. The order therefore may not be disturbed.

Order affirmed.