Railway Express Agency, Inc., Appellant, *v.*
Pennsylvania Public Utility
Commission.

Argued March 24, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*W. Wilson White*, with him *William H. Marx*, of the New York Bar, and *White & Williams*, for protestant, appellant.

*Miles Warner*, Assistant Counsel, with him *Thomas M. Kerrigan*, Assistant Counsel, and *Joseph I. Lewis*, Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*Irving R. Segal*, with him *Bernard G. Segal, Robert L. Kendall, Jr.*, and *Schnader, Harrison, Segal & Lewis*, for applicant, intervening appellee.

OPINION BY WATKINS, J., June 15, 1961:

This appeal is from the order of the Pennsylvania Public Utility Commission granting the application of United Parcel Service, Inc. (hereinafter called United Parcel), the petitioner and intervening appellee, authority to engage as a class D common carrier by truck in the carriage of small parcel traffic to and from all points in the eighteen eastern counties of Pennsylvania, designated in the application; and admitting United Parcel to do business in Pennsylvania.

The weight and the size of the parcels to be carried were limited by this application to packages or parcels weighing 50 pounds or less and having a combined length and girth of not more than one hundred eight inches, with each parcel constituting a separate shipment. The order also excluded the carrying of commodities of unusual value, dangerous explosives, household goods, commodities in bulk, commodities requiring special equipment and those injurious or contaminating to other products; also excluded was service between retail stores and their branches or warehouses, or between retail stores and their branches and warehouses on the one hand and the premises of customers of such stores.

Subsequently, during the course of the hearings, by amendments, there were also excluded the carriage of moving pictures and apparatus, magazines, newspapers, cut flowers and greens, and shipments to a single consignee, aggregating more than 100 pounds.

Protests against the application were filed by 82 carriers including Railway Express Agency, Inc. (hereinafter called Railway Express), the appellant. A substantial number withdrew their protest and elected not to testify or present any evidence; only eight protestants presented evidence; and of these three did not submit briefs to the commission. Railway Ex-

press is the only protestant which has taken exception to the order of the commission.

On April 4, 1960, the commission issued its order in "short form" granting the rights sought and approving the application as amended. After appeal to this Court by Railway Express, United Parcel was granted leave to intervene; and the record was remanded to the commission for further study and consideration and to make specific findings of fact pursuant to the public utility law. The "long form" order of the commission was filed on August 8, 1960. United Parcel had begun the authorized service on April 20, 1960, and has rendered it continuously since that date. A petition for supersedeas was filed with this Court, which after hearing, was refused per curiam on September 16, 1960.

The record shows that United Parcel is one of a number of operating companies controlled by United Parcel Service of America, Inc., that have had over fifty years experience in small package handling and delivery, and 38 years of continuous experience in performing the same type of common carrier package delivery service as was here authorized and operate in many areas throughout the United States. The service is designed to handle large volumes of small packages in a faster, more efficient manner than United States parcel post service, at a cost competitive with uninsured parcel post service. It is important to note that the operation is so designed that every package picked up at any point in the eighteen counties may easily be delivered the day following pick-up, to any point within that territory. It is intended to cure all the well known deficiencies of parcel post service and in order to provide such service at competitive cost the service has developed and uses specially designed vehicles, unique mechanical sorting facilities, radically different operating methods and streamlined documentation and billing procedures.

The service is described in the Commission's order as follows:

"Applicant's method of proposed operation is a simple one. It would divide the entire area proposed to be served into a number of subareas or operating districts, each of these being served by a centrally located station or base. Consignors having goods to be shipped would bring their packages to this station and would pay for transportation on the basis of a flat rate for each package, and an increment scaled according to the weight of each package. C.O.D. charges would be in addition to these. Each package would be receipted for individually by the applicant and, on delivery, by consignee, and would be insured—all without additional charge. Applicant's service would also include attempts to redeliver without additional charge or specific request, and would include returns of undeliverable shipments to shippers.

"At any consigner's option for an additional weekly charge of $2, applicant would routinely call on each business day at the consignor's place of business to pick up any packages ready for shipment. Whether or not this option is exercised, next-day delivery to all points within the proposed service area would be guaranteed, if consignee can be found."

Railway Express is a large carrier operating interstate as well as intrastate and operating by rail, air and water, as well as motor truck. The record is clear, however, that no matter how well Railway Express performs its varied and complex operations it is not as well equipped to discharge the day by day economic needs of the small package consignors and consignees who testified in support of United Parcel's application. This is set forth by the commission as follows:

"Through its witnesses, the applicant in these proceedings stressed its intention and capacity to render a complete small parcel delivery service between all

points in the extensive area described at the start of this order. The record shows that applicant will deliver not only to places where post offices or population centers exist but also to isolated hamlets, construction job sites, and similar locations. Since many, if not most, of these points are not now and never have been served by rail, it is clear that Railway Express Agency is not authorized to offer competition to applicant in rendering the broad type of motor carrier parcel service which is proposed."

The contention of Railway Express is that the order gives the cream of the small parcel traffic to United Parcel. The Commission clearly recognized the possibility of some diversion of small package traffic from Railway Express, but the question in this appeal is whether the grant of authority to transport small packages in this area is justified by consideration of public convenience and necessity.

The Commission in its order specifically found that the operation proposed by United Parcel is necessary and required for the public convenience; that it will fill a public need which is not being adequately met by existing transportation facilities; that the "compelling public need" as is here proposed must outweigh any possibility of competitive adverse effect on the operation of existing carriers; and that United Parcel is fit, willing and able to perform the service proposed.

In considering this application it is the duty of the commission to determine whether or not the grant of such a certificate is necessary or proper for the service, accommodation, convenience or safety of the public. Public Utility Law, May 28, 1937, P. L. 1053, §203, 66 PS §1123. This order must not be vacated or set aside by the court, either in whole or in part, except for error of law or lack of evidence to support the findings, determination or order of the commission or a violation of constitutional rights. Public Utility Law, su-

pra, §1107, as amended, 66 PS §1437. *Noerr Motor Fr., Inc. v. Pa. P.U.C.*, 180 Pa. Superior Ct. 62, 66, 118 A. 2d 248 (1955) ; *Highway Express Lines, Inc. v. Pa. P.U.C.*, 195 Pa. Superior Ct. 92, 169 A. 2d 798 (1961). . . This Court has held that it will not disturb the conclusions of the commissions unless they are capricious, arbitrary or so unreasonable as to amount to an error of law, and that it is not the function of the court to sit as a superadministrative board of review. *Bridgewater Borough v. Pa. P.U.C.*, 181 Pa. Superior Ct. 84, 99, 124 A. 2d 165 (1956) ; *Garner v. Pa. P.U.C.*, 177 Pa. Superior Ct. 439, 450, 110 A. 2d 907 (1955).

The record discloses and the commission concluded that the business of Railway Express is largely long distance and interstate hauling; that its service is primarily one for shipments requiring special handling and personal attention; and that most of the relatively small proportion of its business involving intrastate package hauling will continue with it regardless of the entrance of United Parcel into the field, so that there is no real chance that the new operation will impair the service of Railway Express contrary to the public interest.

Even if it is admitted that the expected diversion from the existing carrier does occur, the public convenience might still require the service proposed as the law does not guarantee any carrier freedom from competition. ". . . The extent of competition among carriers in a given territory is especially a matter which the legislature has placed within the area of administrative discretion. . ." *Zurcher v. Penna. P.U.C.*, 173 Pa. Superior Ct. 343, 348, 98 A. 2d 218 (1953).

The commission properly concluded that there was a public need for the service proposed that was not being met by Railway Express or any other existing common carrier. It recognized, too, that the increased competition for the small parcel business might affect

other small parcel carriers but in the exercise of its administrative discretion concluded "that the compelling public need for service such as is here proposed must outweigh these considerations." The commission has the power to authorize competition where it is necessary to provide adequate service. *Noerr Motor Fr., Inc., v. Pa. P.U.C.,* supra; *Chemical Tank Lines, Inc. v. Pa. P.U.C.,* 193 Pa. Superior Ct. 607, 165 A. 2d 668 (1960); *Highway Express Lines, Inc., v. Pa. P.U.C.,* supra.

The record clearly supports the commission by a wealth of competent evidence, that the applicant is qualified to render the service applied for. The chief contention of the appellant seems to be that the service will not be operated at a profit. This argument is based upon a comparison of estimated figures of annual expenses and the mathematical bearing these figures would have in relation to the volume of packages which United Parcel estimated it would be receiving in the first year of operation. It is obvious that this is not a fair test, as expenses are unusually high in the establishment of a new business and the volume low. It is necessary to take into account the leveling of such expenses and increasing volume with the passage of time. It is certain that the commission took such facts into consideration. The evidence shows that United Parcel was operating elsewhere at a profit. As contended by United Parcel: "The spectacular growth of identical services by United Parcel companies in other areas could not have been accomplished if this service, operating in every instance under similar tariff provisions, is performed at a loss."

The record does not show that the proposed rates would be noncompensatory so that the commission might have inferred that the competition given Railway Express would be deleterious and inimical to the public interest. As already indicated, the evidence disclosed

that operations conducted elsewhere have been success-
ful at the same rate level and no contradictory evidence
was introduced. The apprehension of the Railway Ex-
press of a diversion of business to the applicant seems
to negate the compensation argument. There is nothing
in the record to support a contention that the proposed
rates are not such as will fairly compensate the carrier
for his cost and yield a fair return and in the absence of
such evidence, rates in this hearing became irrelevant.

The contention that a value limitation was neces-
sary to prevent the cream of the business from going
to the applicant under the present order is without
merit. Again the problem is one of administrative dis-
cretion and the commission points out that there never
has been such a limitation placed in a motor carrier's
certificate. It would be almost impossible for the com-
mission to properly police such a limitation and the
failure of proper enforcement would result in all kinds
of chicanery to avoid or disregard the value limitation.

The great weight of evidence supports the conclu-
sion that there is a compelling need for United Parcel
service. This service offers an improved, reasonable,
and practical substitute for parcel post. Its features,
that the witnesses in the record set forth as reasons for
the urgent need of this service, include the automatic
daily pick-up, at any location, for a shipper of any size,
and the resulting avoidance of the necessity of taking
or sending packages to the post office; the prompt, de-
pendable next day delivery service; the full territorial
coverage for pick-ups and deliveries; the automatic
protection against the loss or damage up to $100 value
per package; the ability to trace, and to obtain proof
of delivery quickly and accurately; the careful handling
of packages, avoiding damage and permitting less pack-
ing; the automatic second and third attempt to deliver
packages where delivery cannot be completed on the
first attempt; the acceptance of packages weighing up

to 50 pounds; and the automatic and prompt return of undeliverable packages without additional cost.

Most of the witnesses testified that the service offered by Railway Express did not fulfill their requirements and the commission so found: "Most of the consignor witnesses who testified in support of the instant applications, moreover, were firm in their view that the service presently offered by Railway Express does not meet their needs. In sum, their testimony was that this carrier's minimum rate was high when compared with the average value of the consignment; that many consignors and communities are without pick-up service; and that an equal number of consignees and communities were without direct delivery service. Other criticisms related to elapsed times between shipment and delivery, added charges for return of undelivered consignments, and the like. The result, according to this group of witnesses, was that they are required to continue to use the parcel post system, notwithstanding its recognized deficiencies."

We also agree with the commission's conclusion that the restriction against dual operations as a common carrier and a contract carrier has no application in this case. Section 805, Public Utility Law, supra, 66 PS §1305 provides, inter alia: ". . . no person or corporation shall at the same time hold a certificate of public convenience as a common carrier by motor vehicle and a permit as a contract carrier by motor vehicle, unless for good cause shown, the commission shall find that such certificate and permit may be held consistently with the public interest and with the policy declared in section eight hundred one of this act."

The record establishes that the applicant, United Parcel Service, Inc., is a New York corporation, which, since 1953, has conducted a common carrier service, similar to the one proposed herein, in New York City.

The corporate applicant does not conduct any operation in Pennsylvania except that now being performed under the authority granted in this case. Its service in Pennsylvania is entirely distinct and physically separate from that performed in New York.

United Parcel Service of Pennsylvania, Inc., is a Pennsylvania corporation which is under common ownership with United Parcel Service, Inc., and performs a retail store delivery service as a contract carrier for named stores in the Philadelphia and Pittsburgh area under authority granted by the commission. The order in this case contains a restriction against service by the applicant for retail stores generally.

The applicant's service is a completely separate operation from that of United Parcel Service of Pennsylvania, Inc., in that each company has its own vehicles and employees and there is no commingling in the transportation of packages by the two companies. The record is clear that in no operating instance will goods, moneys, vehicles, personnel, or rates be commingled. Although it is clear that §805 forbids dual operations as a contract and common carrier, it does not prevent the same person or entity from being engaged in one line of business as a common carrier and another as a contract carrier. *Hubert v. P. S. C.*, 118 Pa. Superior Ct. 128, 131, 180 A. 23 (1935). There is no possibility here of the use of unlawful preferences, discrimination and favoritism by carriers conducting dual operations which the law was intended to bar. *Schuylkill Valley Lines, Inc. v. P. U. C.*, 137 Pa. Superior Ct. 101, 8 A. 2d 487 (1939).

Order affirmed.