Overlook Development Company, Appellant, *v.* The Public Service Commission of Pa.

Argued October 3, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*Charles G. Baker,* and with him *Zimmerman, Myers and Kready,* for appellants.—Appellant was not engaged in a business affected with a public interest and the commission therefore had no jurisdiction to enter the orders complained of: Munn v. Illinois, 94 U. S. 113; Richardson v. Commission, 191 Cal. 716; 218 Pac. 418; Del Mar Co. v. Eshleman, 167 Cal. 666; 140 Pac. 591; Borough of Forest Hills v. Penna. Water Co., 11 Corp. Rep. 25; Shubert v. Commission, 77 Pa. Superior Ct. 167.

*Daniel H. Kunkel, E. Everett Mather, Jr.,* Assistant Counsel, and *John Fox Weiss,* Counsel, for the Public Service Commission, appellee, cited: Kleinhans v. North Traction Co., 60 Pa. Superior Ct. 641; Indianapolis v. Kingsbury, 101 Ind. 200, 51 Am. R. 749; Moser v. Greenland Hills Realty Co. (Tex. Civ. App.), 300 S. W. 177.

*Wendell Y. Blanning,* for intervening appellee.

OPINION BY GAWTHROP, J., February 27, 1931:

This is an appeal from an order of the Public Service Commission. The facts are not in dispute. The Manheim Township Water Company, hereinafter called water company, is a small company which serves in Manheim Township, Lancaster County, and obtains its water from the City of Lancaster by a connection with the municipal system at the northern limits of the city. Its main extends northwardly in and along the Lititz Turnpike from the northern limits of the City of Lancaster to the intersection of the Lititz Turnpike with Fordney Road. The Overlook Development Company, appellant, owns a tract of land containing about thirty acres situated on the western

side of the Lititz Turnpike and north of Fordney Road. It has plotted the tract for development purposes and sold some of the lots. In 1925 Eshelman and Boettcher owned and occupied this land; one Moore owned a large tract of land situated on the western side of Lititz Turnpike between Fordney Road and the Eshelman and Boettcher tract; and appellee, Locher, owned a tract of about on hundred and twenty acres of land lying on the eastern side of the Lititz Turnpike and north of the Eshelman and Boettcher tract. At that time Eshelman and Boettcher endeavored to interest Moore and Locher in the joint construction of a water main to serve their respective properties, which main was to connect with the northern terminus of the water company's main at Fordney Road. Locher refused to join in the enterprise or to contribute to the expense involved. The water company, as party of the first part, and Moore, as party of the second part, and Eshelman and Boettcher, as parties of the third part, entered into a tri-party contract in writing, which had for its object the supplying of water by the water company to the lands of Moore and of Eshelman and Boettcher. Pursuant to this contract Eshelman and Boettcher constructed a six inch water main extending about 6,000 feet in and along the Lititz Turnpike from the terminus of the water company's main at Fordney Road to a point near the northern boundary of their land at Roseville Road. This extension passed in front of the land of Moore and of Eshelman and Boettcher and certain other persons. The total cost of the construction of the main was $15,716.38, of which Moore contributed $5,170.50, representing the cost of the construction of the part of the main laid in front of his property. The balance of $10,546.88 was paid by Eshelman and Boettcher, predecessors in title of appellant. This contract provided that the portion of the

water main passing the property of Moore should remain the property of him, his heirs and assigns, subject to the right of Eshelman and Boettcher, their heirs and assigns, to rece've water through said pipe, and that the portion of tne main extending north of Moore's property should remain the property of Eshelman and Boettcher, their heirs and assigns; that Eshelman and Boettcher, their heirs and assigns, should have exclusive control of the part of the pipe line extending north of the Moore tract in so far as the control related to granting permits and the extension of the line; that no permits were to be issued by the water company for connections to the pipe line of Eshelman and Boettcher without their written consent or direction; that the water company would not permit any extension of the water main beyond the Roseville Road without the written consent of Eshelman and Boettcher; that Eshelman and Boettcher could not sell the privilege of extending the water main beyond the Roseville Road without first having secured the consent of the water company; and that before making said connection a party buying the privilege of extending the main beyond the Roseville Road might be required to pay a proportionate share of the construction cost of the water main extending north of the Moore tract. The contract provided further that Eshelman and Boettcher should install at the southern end of their pipe line a meter for measuring the water passing into their pipe line, and that "no water shall be turned into the pipe line of the parties of the third part (Eshelman and Boettcher) until the six inch compound meter hereinbefore referred to is properly installed," and that Eshelman and Boettcher should have the exclusive permission to "sell the right to connect with their pipe line," subject, however, to the rules and regulations of the water company. Pursuant to this contract the meter was installed and the water company began supply-

ing water to Eshelman and Boettcher. Subsequently Eshelman and Boettcher organized the Overlook Development Company, a corporation, appellant, and transferred and assigned to it their right, title and interest in the tract of land above mentioned, and their rights under the above mentioned contract. Appellant has laid lateral extensions from its main into its land and has permitted those who purchased lots from it to make connections with these extensions, and the latter have been receiving service from the water company. Appellant has also permitted four owners of land abutting on the Lititz Turnpike, who were not purchasers of any of its land, to make connections with its main upon the payment of a consideration. The water company is now supplying water to consumers having connections with the line built by Eshelman and Boettcher and with the laterals which were constructed by appellant, and is making its charges directly against the consumers at its current rates.

Locher who, as stated above, owns a tract of more than one hundred acres of land on the northeast corner of Lititz Turnpike and Roseville Road and was originally invited to join in the enterprise of extending the water main north of Fordney Road, went to Eshelman and Boettcher soon after they had installed the water main and requested permission to make a six inch connection at the northern terminus of their water main for the purpose of securing a water supply for his land. They asked him to pay $2,000 for the privilege of making a connection, which amount they estimated as the proportionate share of the cost of laying the water main which he should pay for the privilege of making the connection. Since that time appellant has offered repeatedly to permit Locher to make the connection if he paid them what they considered to be a reasonable part of the cost of the original construction. He refused to accept its terms

and filed before the commission a complaint against the water company and appellant, averring that the water company has refused to furnish water to his property, except upon unreasonable terms, to wit, that he must either construct all necessary facilities at his own expense to connect his property with the line owned by the water company and terminating at Fordney Road, or secure permission from the Overlook Development Company to connect with its pipe line; and that the latter company has refused to permit him to connect with its pipe line except upon terms which are unreasonable. The prayer was for an order requiring both respondents to supply water to the property of petitioner upon reasonable terms.

After hearing the commission filed a report in which it found, inter alia, that the water company is engaged in supplying water to all persons having connections with the main extending from its intersection with the main of the City of Lancaster at Liberty Street to its terminus in the Lititz Turnpike near Roseville Road; that the title to the pipe line along the property of the Overlook Development Company is in the latter, but that this pipe line, as well as the main of the water company with which it connects, constitutes a facility of the water company presently used in its public service business regardless of the title to the several sections of the pipe line; that it is engaged in furnishing public water supply service throughout the entire length of the main extending to the intersection of Lititz Turnpike and Roseville Road and is under the duty to make all reasonable connections and extensions to its service at any point along said main; that appellant, by permitting its main to be used by the water company in connection with service rendered to other patrons, dedicated it to the public service and made it a facility of the water company; and that, therefore, appellant's right, under the tri-party contract, to charge others for the privilege of connecting

with its main is gone, and that it is not entitled to charge or to receive any compensation for connections to be made to its main for the purpose of extending the service of the water company. The order entered was that the "water company, if and when pipes are laid by complainant and a prospective patron desiring water service makes proper application to it for such service, provide a suitable connection with the six inch main in the Lititz Pike and render such service." The connection ordered is one to be made with the main constructed by appellant.

The question to be determined is whether the order is unreasonable and confiscatory as it affects appellant. We have no difficulty in accepting the finding and conclusion of the commission that the part of the water main constructed by appellant in the Lititz Turnpike in front of its land is a facility of the water company, notwithstanding the fact that it was constructed and paid for by appellant and is owned by it. Art. I, Sec. 1, of the Public Service Company Law provides: "The term 'facilities,' as used in this act, includes all plant and equipment of a public service company, which includes all......apparatus, appliances......conduits, ......ducts, pipes......pipe lines, mains......and any and all other means and instrumentalities in any manner owned, operated, leased, licensed, used, controlled, furnished or supplied for, by, or in connection with the business of any public service company." Under this statutory definition of "facilities" the water main constructed by Eshelman and Boettcher became a facility of the water company the moment the latter began to use it in supplying water to a patron. But in our view the mere fact that this water main became a facility of the water company did not destroy the private character of the main, nor render it subject to use by the water company in supplying water to the public generally, or to any portion of the public as such. If

this be not so then one cannot construct a water main on his own land, connect it with a main of a public service company and receive service through it from the company without impressing it with a public use which would require him to permit any other person in the neighborhood, who might desire service from the company, to connect with his main. Nor are we persuaded that the action of appellant in permitting those to whom it sold lots, and four neighboring owners, to connect with its main and to be served with water through it by the water company, affected its right to refuse to permit others to connect with it. The main continued to be appellant's private property, subject only to the rights therein which it granted to others by contract, and did not become devoted to a public use. "The essential feature of a public use is, that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefinite or unrestricted quality, that gives it its public character": White v. Smith, 189 Pa. 222, 228. Appellant is not engaged in the business of supplying water to the public. Its business is not "affected with a public interest." Therefore, it is not subject to public regulation. See Munn v. People of Illinois, 194 U. S. 113. There is no evidence in the record to support the finding of the commission that appellant ever dedicated the main to the public use, or to support the argument of its counsel that appellant gave the water company the exclusive use of the main. Dedication is a matter of intention: Waters v. Philadelphia, 208 Pa. 189. There is no evidence that would support a finding that appellant, or its predecessors in title, ever intended to dedicate the main to the public use. The only rational conclusion from the evidence is that appellant continued to claim ownership of the main and the right to decide who should use it and the terms of the use. The water company does not contend that appellant gave it the exclusive use

of the main, but has continued to recognize appellant's rights under the tri-party contract, which constituted an ordinary business arrangement by which appellant's predecessors in title obtained service from the water company and the latter got an increase of patronage without the expenditure of any money. There seems to be no sound reason why appellant is not entitled to have this contract enforced. The argument of the counsel for the commission that the contract gave appellant the power to determine the extent of service which the water company may render, and the power to say that the main shall no longer be used and thus deprive all of water service, is unsound. The contract merely permits appellant to decide who shall be permitted to make a connection with the main which it built and paid for, and to fix the terms upon which a connection may be made with that main. Of course, appellant cannot now prevent the use of the main by those who have acquired an easement in it. The contract does not interfere with the right of the water company to build mains to supply service to the public. What it does prevent is the use of appellant's main by the water company in violation of its terms. A public utility may be compelled, under proper circumstances, to extend its facilities to accommodate the public, but the private property of an individual cannot be appropriated for that purpose without due process and without making or securing compensation. Our conclusion is that the order of the commission, directing the water company to provide the complainant a connection with appellant's main without paying or securing to it compensation, is unreasonable and confiscatory, and in violation of the due process clause of the Fourteenth Amendment to the Federal Constitution, and that the commission had no authority to make an order directing the water company to provide the complainant a free connection with appellant's main.

In view of the fact that the Manheim Water Company has no water supply of its own, but obtains all its water from the City of Lancaster, we think that notice of this proceeding before the commission should have been given to the city so that it might have been represented at the hearing if it desired. Counsel for the commission informed us at the argument of this appeal that no such notice was given. We make this observation because counsel for the commission took the position, at the argument, that the rights of the City of Lancaster were not involved in this proceeding. Our view is to the contrary and we express it here for the purpose of saving useless litigation in proceedings of a similar nature before the commission.

The order is reversed at the cost of complainant.