Schuylkill Valley Lines, Inc., Appellant, *v.* Pennsylvania Public Utility Commission et al.

Argued April 28, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Desmond J. McTighe,* of *Fox & McTighe,* for appellant.

*Harry H. Frank,* with him *Harry M. Showalter,* for appellee.

*David E. Groshens,* for intervenor.

OPINION BY BALDRIGE, J., September 27, 1939:

The Schuylkill Valley Lines, Inc., hereinafter called Schuylkill Valley, has appealed from the order of the Public Utility Commission entered October 31, 1938, granting to the intervening appellee certain group and party rights as a common carrier.

Joseph Bearoff, intervening appellee, on September 8, 1937, was granted a certificate of public convenience as a contract carrier for the transportation of school pupils from points in Upper Merion Township, Montgomery County, to and from schools located in that township, and to and from other school activities in other points in Pennsylvania.

On November 1, 1937, he applied for a certificate of public convenience to operate motor vehicles as a common carrier "to transport groups or parties of persons for clubs, social and fraternal organizations, churches,

sight-seeing tours, educational tours, specially organized trips to meetings, conventions and athletic events and the like, which originate in the Borough of Conshohocken, West Conshohocken, Norristown, and Bridgeport, and in the Townships of Lower Merion, Upper Merion, Plymouth, East Norriton, West Norriton and Lower Providence."

The application was protested by Schuylkill Valley, the appellant, Auch Interboro Transit Company, Aronimink Transportation Company, Pennsylvania Greyhound Lines, and the Reading companies. All but the Reading companies have licenses for group and party service originating at points located on the scheduled routes. Five hearings were had, at which the applicant called sixteen, and the protestants thirty-three, witnesses, and five hundred and forty-three pages of testimony were taken.

The applicant testified that as a contract carrier he operates four school buses, which we will refer to as Nos. 1, 2, 3, and 4, three of which are 1926 models, painted dark blue, equipped with two-wheel booster brakes, on which appear the words "SCHOOL DISTRICT OF UPPER MERION:" the fourth is a 1937 model, orange colored, with four-wheel Westinghouse airbrakes, and marked "SCHOOL BUS." The seating capacities of these buses range from thirty to sixty-eight passengers; No. 2 is the smallest and No. 4, the largest. They are operated each day of the week during the school term, except Saturdays and Sundays, by three men and the applicant, but are not driven under the contract from the latter part of June to September. The applicant testified that if the commission granted the certificate, he proposed to use his present equipment.

Some of the witnesses called by the petitioner stated that the present service is satisfactory and adequate. Representatives of different organizations testified that buses are not obtainable for football games, picnics,

and other gatherings. These were more or less isolated instances where either adequate notice was not given or a large number of buses were wanted on special occasions for single movements of an entire group rather than sectional movements requiring several trips.

Testimony offered upon the part of the appellant was that prompt, adequate, and safe service is rendered by the protestants and additional service is not required. There was proof that Schuylkill Valley operates twenty-seven buses of the transit type, with seating capacities of twenty to thirty-nine passengers. Two of them, used to a large extent for groups and parties, were not licensed since 1938, and, for a greater portion of the day, as many as twelve buses are available for that type of service. The appellant has a number of bus operators, including twelve extras, specially selected and trained in this work. For the past two years there has been no demand for group and party service which the company has not been able to meet, and, if the present application is granted, a number of these specialized men will be thrown out of work. Since the appellant began business about five years ago, the group and party work has been a substantial factor in the maintenance of high-grade schedule route standards, and ninety-six cents out of every dollar of revenue earned by the company is used for expenses, thus leaving a margin of profit of only four cents. Any reduction in revenue will necessarily decrease the standard of service in order to maintain the present wage scale, and, with the exception of certain events in July and August, the maximum number of buses required in group and party service is six. The vice-president of Schuylkill Valley stated that the two-wheel brakes on the applicant's buses are unsafe, that other private buses generally use four-wheel brakes and can stop more suddenly, and that collisions are probable as a result of the inability to stop promptly.

James C. Britton, transportation engineer for the

Pennsylvania Greyhound Lines, testified that they have modern buses of a capacity of from thirty-three to thirty-seven passengers, available for the type of service mentioned in the applicant's petition, which are equipped with airbrakes, rear door, safety glass throughout, reclining chairs, fire extinguishers, usual safety equipment, etc., and operated by drivers who are sent to school to be trained as mechanics and operators so that they can give safe and satisfactory service. He stated further that three of the petitioner's buses are built to haul twenty-five to twenty-nine passengers; that with their longitudinal seating arrangement they can be easily overloaded; when operated on hills "there is a great probability that a serious accident can result from the brakes not being able to hold those buses in such conditions;" and the brakes on three of them are unsafe for groups and parties, as buses in such service usually travel faster than those used to drive children to and from school.

The commission filed a three-page report, granting the intervening appellee the right to operate motor buses as a common carrier for the transportation of "groups and parties of persons from the Boroughs of Bridgeport and Norristown and the Township of Upper Merion to various points and places in Pennsylvania," subject to conditions, one of which is that "no right, power or privilege is granted to transport persons on special excursions or sight-seeing tours." The commission refused the applicant the right to render group and party service in the balance of the territory included in the application, to wit: from the Borough of Conshohocken, West Conshohocken, and the Townships of Lower Merion, Plymouth, East Norriton, West Norriton, and Lower Providence to various points and places in Pennsylvania.

We will consider, first, the appellant's contention that, as it has been deprived of a full and fair hearing, it has been denied "due process of law," contrary

to the fourteenth amendment of the United States Constitution and article 1, §9, of the Pennsylvania Constitution.

The record discloses that the appellant had notice of the various hearings, was represented thereat by counsel, ample opportunity was afforded all the parties to present evidence, to examine and cross-examine witnesses, and appellant filed a written brief but made no request for an oral argument. Its counsel merely stated to an examiner: "As far as oral argument is concerned, if the Commission seeks to grant an oral argument, we will desire to be heard." The procedure, in our judgment, did not deny the appellant due process of law. On the contrary, it had an opportunity to present its case and to file written briefs, so that a full hearing, essential to a proceeding of this character, was had. It cannot be said, therefore, that appellant was deprived of its constitutional rights.

The facts to which we have directed attention may be readily distinguished from those in the case of *Ohio Bell Telephone Co. v. Public Utilities of Ohio*, 301 U. S. 292, 81 L. ed. 1093, and other citations upon which appellant relies.

The appellant also asserts that the commission is without authority to permit the applicant to perform a dual operation as a common carrier and as a contract carrier, with the same facilities, without showing clearly that the public interest requires it. The Public Utility Law of May 28, 1937, P. L. 1053, art. VIII, §805 (66 PS §1305) provides: "After the effective date of this act, no person or corporation shall at the same time hold a certificate of public convenience as a common carrier by motor vehicle and a permit as a contract carrier by motor vehicle, unless for good cause shown, the commission shall find that such certificate and permit may be held consistently with the public interest and with the policy declared in section eight hundred one of this act." Section 801 (66 PS §1301), referred

to, declares it to be the policy of the legislature to regulate the service of common carriers by motor vehicle in such manner as to preserve and foster sound economic conditions, and to promote safe, adequate, economical, and efficient service by common carriers, and just and reasonable rates therefor, without unjust discrimination and unfair or destructive practices.

In *Hubert et al. v. P. S. C.,* 118 Pa. Superior Ct. 128, 131, 180 A. 23, we pointed out that our decisions hold that the same person may be engaged in one line of business as a common carrier and in another as a private carrier. "But we refuse to extend or apply this ruling to the use of the same facilities, at the same time, in both common carrier and private carrier transportation."

In the instant case, the same facilities were not used, at the same time, in the same business, as both common carrier and contract carrier. Transportation under a contract with a school district and group and party service as a common carrier do not compete one with the other. An opportunity is not thus given for evasion of applicable tariff provisions, discrimination in rates, and other frauds, as the applicant does not propose to carry children to school at the same time that he transports groups and parties of persons from Bridgeport and other places to various points in Pennsylvania.

Our conclusion, therefore, is that this was not the type of dual operation forbidden by the Public Utility Law.

That brings us to what we deem the most important of appellant's complaints, namely, that the commission's order is an arbitrary and capricious abuse of discretion under the facts presented, as it is extending rights to one who has failed to comply with the law relative to school buses, thus defeating the legislative intent of affording special consideration to the safety of school children transported therein.

The amendment of June 29, 1937, P. L. 2329, §14,

to the Vehicle Code of May 1, 1929, P. L. 905, §828 (75 PS §436),[1] provides, inter alia, as follows:

"(b) No person shall own or operate a school bus carrying school children on the highways of this Commonwealth in a school bus that, in addition to the other requirements of this act, does not conform with the following:

&ast; &ast; &ast; &ast; &ast; &ast;

"(5) All windows shall be so constructed and installed so that they shall readily slide up and down only, except that the windows in the rear of the bus shall be stationary. All side windows in the bus shall be provided with removable heavy wire mesh, or other removable guard ......

&ast; &ast; &ast; &ast; &ast; &ast;

"(7) Every school bus shall be of a uniform color which shall be orange, and every such bus shall be labelled both in the front and in the rear with black letters, not less than six (6) inches in height, with the words "School Bus," showing to the outside.

&ast; &ast; &ast; &ast; &ast; &ast;

"Provided, that nothing contained in this section shall make unlawful the use before August first, one thousand nine hundred forty, of any vehicle as a school bus for the transportation of school children, if such vehicle was used under contract with any school or school district for the transportation of school children before the effective date of this act."

The act became effective June 29, 1937, which was some five weeks before the contract was entered into on August 2, 1937, between the applicant and Upper

---

[1] Further amended by Act No. 400, approved June 27, 1939, P. L. 1135, which provides that school buses shall have additional safety requirements, including entrance doors of certain dimensions of an approved safety type, with suitable hand rails; fire extinguisher of an approved type; and in all new buses there shall be no longitudinal seats.

Merion Township. He was therefore required to comply with its provisions creating safety standards.

The amendment of July 1, 1937, P. L. 2583, §1, to the School Code of May 18, 1911, P. L. 309, art. XIV, §1404 (24 PS §1375), provides, in part, as follows: "All vehicles hereafter purchased or placed in use for the transportation of pupils ...... shall conform to standards prescribed by the State Council of Education." In accordance therewith, the State Council of Education issued a pamphlet, entitled "Standards, Rules and Regulations Relating to the Transportation of Public School Pupils," which set forth specifications governing new school bus equipment and a classification of vehicles to be used for that purpose. The applicant's buses come under class "A", which requires that all buses shall be the uniform color of orange and shall be labelled in the front and rear in black letters not less than six inches in height with the words "SCHOOL BUS," and every emergency door, inside and outside, shall be labelled in black letters "EMERGENCY DOOR." "4. Brakes, a. Four wheel brakes are required on all new buses. b. Hydraulic, vacuum, or air actuated power brakes with reserve tank, capable of supplying four full brake applications after the motor has stopped, are required on every school bus of certificated chassis weight in excess of 3,000 pounds. Brakes shall be capable of stopping fully loaded bus in 30 feet from a speed of 20 miles per hour with not more than 50 pounds manual effort on the foot pedal."

It was the duty of the applicant, whose buses weigh more than 3,000 pounds, to see that they were properly equipped. We can but conclude that his three buses with two-wheel booster brakes are not in conformity with the law. Obviously, the legislature had a purpose in specifically designating a distinctive, uniform color and in requiring certain equipment for school buses. If these buses are known to be used for other than school purposes, the protection the legislature in-

tended to be given school children while being transported on the highway will, in a measure, be lost, as others using the highways when buses containing school children are in the vicinity will not have notice to exercise special care. No reference whatever was made to that important feature in this case by the commission in its very brief discussion of the issues involved. The statutes and regulations of the State Council of Education, to which we have called attention, apparently were ignored in permitting the applicant to use three of his buses which do not conform to legal requirements. His more modern 1937 bus seems to afford greater protection to children than the other three, so that it can be safely used by the pupils of Upper Merion Township in attending any school event in which they are interested. The additional use thereof beyond applicant's rights as a contract carrier should be confined to that purpose.

We are all of the opinion that as the applicant failed to obey the law under the certificate he already enjoys, his rights should not be substantially extended.

The order of the commission granting group and party rights to the applicant is hereby reversed, and the record is remitted to the end that a further order may be entered in accordance with this opinion; the parties to pay their respective costs.