### D. F. Bast, Inc. et al., Appellants, *v.* Pennsylvania Public Utility Commission.

488

Argued November 12, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*William J. Wilcox*, with him *Snyder, Wert, Wilcox, Frederick & Doll*, for appellants.

*R. H. Shertz*, with him *Paul F. Barnes*, and *Shertz, Barnes & Shertz*, for appellants.

*George A. Rupp,* and *Butz, Hudders, Tallman & Rupp,* for appellants.

*John E. Fullerton,* for appellant.

*Paul Ribner,* Assistant Counsel, with him *Thomas M. Kerrigan,* Acting Counsel, for Public Utility Commission, appellee.

*Gene D. Smith,* for applicant, intervening appellee.

OPINION BY WRIGHT, J., January 21, 1958:

On May 15, 1956, Bob Young Trucking, Inc., a certificated common carrier, applied to the Pennsylvania Public Utility Commission for an amendment to its existing certificate seeking authority "to transport as a Class D carrier all types and forms of steel and metal articles from the City of Bethlehem to points in Pennsylvania". Protests were filed by a number of other certificated common carriers. After taking extensive testimony at hearings on June 25, September 4 and 5, and October 15, 1956, the Commission, by short form order dated April 15, 1957, amended the applicant's certificate to include the following authority: "To transport, as a Class D carrier, fabricated or structural iron and steel articles, requiring the use of specially constructed vehicles such as pole trailers, flatbed trailers or low-side trailers, from the City of Bethlehem, Northampton and Lehigh Counties, to points in Pennsylvania, excluding the transportation of manufactured iron and steel articles for Bethlehem Steel Company to the City of Johnstown, the Boroughs of Franklin and Conemaugh and the Township of West Taylor, Cambria County". Seven of the protestants appealed. Upon the Commission's petition, we remitted the record for the preparation of a long form order.

As filed on September 3, 1957, the long form order further limits the grant of additional authority "to points in Pennsylvania within 100 miles of Bethlehem".

Briefly stated, the contentions advanced by appellants are (1) that the applicant failed to prove need for the proposed service or inadequacy of the existing service; (2) that the applicant is unfit to be granted additional authority. In limine, it should be noted that the applicant operates in a highly specialized field. Its equipment is designed to handle large, lengthy and unwieldy shapes and structures of iron and steel. A complete repair and maintenance shop services this equipment and also designs and constructs pole trailers of a size and capacity to haul extremely large pieces. The driver-personnel is specially trained to handle the transportation of bulky and cumbersome fabricated and structural articles. Applicant's existing rights are set forth in the footnote.[1] There is no question as to its capacity to perform the service for which authority is requested.

---

[1] To transport as a Class D carrier, iron and steel articles for the Bethlehem Contracting Company in the City of Bethlehem to points within 50 miles by the usually traveled highways of the limits of said city; transport as a Class D carrier, building blocks and cement aggregates such as brick, slabs, pipe, posts, and other cement products from points in the City of Bethlehem, Northampton County, to points within 75 miles by the usually traveled highways of the limits of said city; to transport as a Class D carrier bricks from points in the Boroughs of Quakertown, Bucks County, and Nazareth, Northampton County, to points within 75 miles by the usually traveled highways of the limits of the said boroughs. To transport as a Class D carrier, building construction materials, such as are usually transported in dump trucks, between points not to exceed a distance of twenty-five miles from point of origin to point of destination in the Counties of Lehigh, Northampton, Bucks, Berks, Carbon, Monroe, Pike, Montgomery, and Schuylkill; to transport as a Class D carrier shovels, contractors' equipment, between points in the Counties of Lehigh, Northampton, Bucks,

Section 1107 of the Public Utility Law of 1937, P. L. 1053, 66 P.S. 1437, provides that "Any appeal to the Superior Court shall be determined upon the record certified by the commission to the court . . . The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation of constitutional rights". Section 1112, 66 P.S. 1442, further provides that "Whenever the commission shall make any rule, regulation, finding, determination, or order under the provisions of this act, the same shall be prima facie evidence of the facts found, and shall remain conclusive upon all parties affected thereby, unless set aside, annulled, or modified in an appeal to the Superior Court taken as provided in this act".

The scope of our review in cases of this kind is to determine whether there is error of law or lack of evidence to support the finding, determination, and order of the Commission: *Lyons Transportation Co. v. Pa. P. U. C.*, 163 Pa. Superior Ct. 335, 61 A. 2d 362. See

---

Berks, Carbon, Monroe, Pike, Montgomery, and Schuylkill; to transport as a Class D carrier construction machinery where special equipment is required between points in Pennsylvania within 100 miles by the usually traveled highways of the limits of the City of Bethlehem, Northampton County; to transport as a Class D carrier, amesite from Rock Hill in the County of Bucks to points in Pennsylvania within an air line distance of 25 miles of the limits of Rock Hill; to transport as a Class D carrier crushed stone from the City of Bethlehem, Northampton County, to points in Pennsylvania within an air line distance of 50 miles of the limits of said city; to transport as a Class D carrier in emergencies (to apply only in cases of breakdowns, delivery to a job site off the highway or because of lack of service by another certificated carrier)—iron and steel articles from the Bethlehem Steel Company in the City of Bethlehem, Northampton County, to points in Pennsylvania within 100 miles by the usually traveled highways of the limits of said City.

also *Schuster v. Pa. P. U. C.*, 179 Pa. Superior Ct. 552, 117 A. 2d 878. Where the Commission has found that a proposed service would be in the public interest, inquiring by the appellate court in this regard is limited to a determination of whether there is substantial evidence to support the findings of the Commission. It is for the Commission to determine whether the available equipment and facilities are sufficient and adequate to meet the public demands, and the extent of competition to be allowed is largely an administrative question within the sound discretion and judgment of the Commission: *Leaman Transportation Co. v. Pa. P. U. C.*, 175 Pa. Superior Ct. 553, 106 A. 2d 901. See also *Daily Motor Express v. Pa. P. U. C.*, 183 Pa. Superior Ct. 120, 130 A. 2d 234; *Follmer Trucking Co. v. Pa. P. U. C.*, 171 Pa. Superior Ct. 75, 90 A. 2d 294. We do not exercise our independent judgment, nor sit as a super-administrative board: *Garner v. Pa. P. U. C.*, 177 Pa. Superior Ct. 439, 110 A. 2d 907. See also *Borough of Bridgewater v. Pa. P. U. C.*, 181 Pa. Superior Ct. 84, 124 A. 2d 165. Substantial evidence to support a finding of public necessity means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion: *Pittsburgh & Lake Erie R. R. Co. v. Pa. P. U. C.*, 170 Pa. Superior Ct. 411, 85 A. 2d 646. See also *Modern Transfer Co. v. Pa. P. U. C.*, 182 Pa. Superior Ct. 110, 125 A. 2d 463. While we may review its sufficiency and probative value, the weight to be given the evidence is for the Commission to decide: *Sayre v. Pa. P. U. C.*, 161 Pa. Superior Ct. 182, 54 A. 2d 95.

The primary object of the public service laws is not to establish a monopoly or to guarantee the security of investment in public service corporations, but first and at all times to serve the interests of the public: *Sayre v. Pa. P. U. C.*, supra, 161 Pa. Superior Ct. 182,

54 A. 2d 95. See also *Colombo v. Pa. P. U. C.*, 159 Pa. Superior Ct. 483, 48 A. 2d 59. Section 203 of the Public Utility Law, 66 P.S. 1123, provides that a certificate of public convenience shall be "if and when the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public". The burden of proof is upon a certificated carrier who seeks additional authority to establish (1) the need for the additional service and (2) the inadequacy of existing service: *Furst v. Pa. P. U. C.*, 184 Pa. Superior Ct. 330, 134 A. 2d 435. No particular type of evidence is required if the evidence as a whole is legally sufficient to support the order. Absolute necessity is not a requisite: *Daily Motor Express v. Pa. P. U. C.*, supra, 183 Pa. Superior Ct. 120, 130 A. 2d 234. The applicant need not establish a present demand for the service in every square mile of the territory certificated. Proof of necessity within the area generally is sufficient: *Zurcher v. Pa. P. U. C.*, 173 Pa. Superior Ct. 343, 98 A. 2d 218. See also *Garner v. Pa. P. U. C.*, supra, 177 Pa. Superior Ct. 439, 110 A. 2d 907.

What may constitute public need for the services of a motor carrier depends upon the locality involved and the particular circumstances of each case: *Noerr Motor Freight, Inc. v. Pa. P. U. C.*, 181 Pa. Superior Ct. 322, 124 A. 2d 393. See also *Modern Transfer Co. v. Pa. P. U. C.*, supra, 182 Pa. Superior Ct. 110, 125 A. 2d 463. In this connection we have been particularly impressed by that portion of the argument in applicant's brief which is set forth in the footnote.[2] No

---

[2] "In this era of an expanding economy with its attendant increase in construction of all types, particular emphasis must be given to the needs and demands of the public upon the steel industry and allied producers and processors of iron and steel.

useful purpose would be served by reciting the testimony of the several witnesses. This was done with

"Bethlehem, Pennsylvania is recognized as one of the centers of steel and iron production. As was inevitable, producers of allied materials and processors of iron and steel located in Bethlehem.

"The demand for fabricated and structural iron and steel articles during the recent years frequently outran the production and processing of such material. Highway programs, State and Federal, are consuming vast quantities of iron and steel for roads and bridges. Hospitals, schools, new mental institutions, homes for the aged, and similar institutions are the order of the day and demand more iron and steel. Industry is on the move from urban centers to adjacent rural sites and more iron and steel is needed.

"The rapid expansion of construction in industrial, institutional and public fields has not only taxed the ingenuity of the producers and manufacturers of steel and steel and iron structural articles but has caused the development of transportation specialists, who maintain and operate equipment designed to haul the large and unwieldy shapes needed for this construction.

"Structural and fabricated iron and steel articles are most treacherous to haul. They develop an almost perverse nature and will whip like a fishing rod or slide like an avalanche unless loaded and transported by men who, by experience, study and constant practice, have become specialists in the field upon equipment appropriate for such hauling.

"The trend among fabricators and processors of steel and iron is to design, fabricate and assemble in the plants and ship in large units. This calls for specially constructed equipment and unique 'know how' to operate this equipment safely over the highways.

"There is an increasing tendency of industry to leave the crowded urban areas and locate plants in rural sections, away from railroad facilities. It is common knowledge that institutions generally are erected and located in relatively remote locations. These facts demand that carriers be able to make job site deliveries.

"The extreme high cost of the large and intricate machinery needed to erect steel and structural shapes and the high wages paid to the men who operate such machines, make it essential that deliveries of construction material be made on a given schedule. Delays, occasioned either by inadequate motor equipment, or the unavailability of specialized motor haulers, are expensive. If struc-

considerable detail in the Commission's order. We are entirely satisfied from our review of the voluminous record that the Commission was warranted in finding that the applicant met its burden of showing need for the additional service and the inadequacy of existing service.

Supporting the application were representatives of the following shippers: Luria Steel Supply Company, Bethlehem Iron Works, Posh Construction Company, Bethlehem Contracting Company, Luria Engineering Company, and Bethlehem Fence Works. In substance, they all agreed upon the need for fast service by a carrier providing specialized service and expert handling, and having a terminal located in Bethlehem. They all requested that the applicant should be granted the additional authority sought, and indicated that the service provided by protestants, if not entirely inadequate, was certainly not as satisfactory. It should be noted that their complaints as to inadequacy do not relate to the transportation of relatively small items which can be hauled in van type trailers or straight trucks, but to the transportation of large structural pieces and long lengths of steel and fabricated items on pole trailers, flat-bed and low-side trailers, particularly where delivery is to be made to the job site.

The protestants did not call a single public or shipper witness, but confined their testimony to that of their own representatives whose position in substance was that they should be allowed to provide the service and be protected from competition. With the exception of Bast, the appellants are line-haul carriers of general commodities. While some of them own flat-

---

tural shapes must be transported in sections and reassembled before erection delays are inevitable and costs increased."

bed trailers, they are for the most part not equipped for specialized handling of bulky and unwieldy structural or fabricated articles, and they do not, with the exception of Bast, own pole trailers. At about the time of the hearings, a campaign of solicitation of business was promoted by the appellants in which they expressed their willingness and ability to provide the proper equipment and furnish the proposed service. Consideration cannot be given to a protesting carrier who does not give service to which the public is reasonably entitled until another carrier seeks the right to render competitive service in the manner demanded by the shipping public: *Noerr Motor Freight, Inc. v. Pa. P. U. C.,* supra, 181 Pa. Superior Ct. 322, 124 A. 2d 393; *Modern Transfer Co. v. Pa. P. U. C.,* supra, 182 Pa. Superior Ct. 110, 125 A. 2d 463.

We come now to appellants' second contention. Robert D. Young, the owner of all except one share of applicant's stock, freely admitted that he had exceeded his certificated authority in certain prior operations, and that he had been fined by the Commission on at least two occasions for violating his existing rights. Some of this illegal hauling was during a time of emergency due to floods. Some of it related to installations for the armed services. When informed of its limited rights, the applicant entered into a lease agreement for equipment to be operated by one of the large shippers in Bethlehem by men on its payroll, and promptly applied for more extensive rights. The Commission was satisfied that the applicant was operating under a bona fide misunderstanding as to the extent of its authority.

Young was vigorously cross-examined on the matter of misunderstanding, including prior unauthorized operation, by several of the able counsel for protestants. His testimony remained unshaken and unimpeached.

Appellants argue that Young adopted a defiant attitude, and stress particularly his statement on cross-examination: "A. If it is approved, I will go home and be a good boy and operate legal—until then I'll operate illegal". Immediately after this statement appears the following: "Q. Suppose the Commission turns this application down, what will you do then? A. Then I'll have to buy somebody out". In answer to a suggestion by counsel that Young was testifying "with braggadocio", the hearing examiner stated that ". . . it is my impression that the witness has not adopted a 'braggadocio' attitude".

In *Lancaster Transportation Co. v. Pa. P. U. C.,* 181 Pa. Superior Ct. 129, 124 A. 2d 380, President Judge RHODES said: "The mere fact of prior operation without commission approval is not per se equivalent to an offense which will prohibit absolutely the acquisition of proper authority when application is subsequently made. The distinction between those violations which are prohibitive and those which will be accepted as competent evidence is, to a large degree, dependent upon the issue of good faith. If the violation is the result of a bona fide misunderstanding of the service authorized by the commission, there is no substantial basis, either legally or morally, to object to its use in a certification proceeding . . ." In its order in the case at bar, the Commission made the following pertinent observation: "It should be stated at the outset that it is clear from the record that the applicant has, in fact, been providing service for which authority is here sought. The applicant testified that he purchased his present rights to haul iron and steel articles from one Szilagyi in 1951 and was then informed that he could haul for anyone in Bethlehem whereas the rights were actually restricted to Bethlehem Steel. He believed that his certificate read 'Bethlehem Steel

and Bethlehem' rather than 'Bethlehem Steel in Bethlehem'. Inasmuch as during the period between 1946, when the applicant started in business as an individual, and 1951, when he acquired the Szilagyi rights, the applicant provided and operated equipment under lease to Szilagyi apparently without question as to the service which Szilagyi was holding out, it can be seen how a misunderstanding of the extent of the rights acquired could and, we are satisfied, did develop".

The question whether prior violations are excusable is primarily a matter for the Commission: *Arrow Carrier Corp. v. P. S. C.*, 120 Pa. Superior Ct. 570, 182 A. 711. It is for the Commission to determine whether prior violations have rendered the applicant unfit: *Highway Express Lines v. Pa. P. U. C.*, 161 Pa. Superior Ct. 98, 54 A. 2d 109. The instant factual situation is somewhat similar to that in *Daily Motor Express v. Pa. P. U. C.*, supra, 183 Pa. Superior Ct. 120, 130 A. 2d 234, wherein we noted that a denial of the application ". . . would not preserve the status quo concerning service presently available to the public. On the contrary, it would eliminate service heretofore rendered which had proved eminently satisfactory, albeit unauthorized . . .". We therein held that approval of the application in question would ". . . permit the continuance of a public service of which these shippers have availed themselves and of which they stand in need". See also *Cage v. P. S. C.*, 125 Pa. Superior Ct. 330, 189 A. 896, wherein an order of the Commission refusing to grant additional authority was reversed. In the *Cage* case Judge (now President Judge) RHODES stated: "We do not see how these prior violations could then properly be a determining factor in refusing additional rights. If the additional rights are necessary, and a continuation of the restriction in the certificate would be unfair and injurious to the appellants and

the public, prior violations for which the appellants were punished by the commission afforded no reasonable basis or excuse for a continuation of that restriction or for the challenged order".

In view of the finding of good faith, see *Pennsylvania Railroad Co. v. Pa. P. U. C.*, 182 Pa. Superior Ct. 54, 125 A. 2d 624, the Commission was warranted in concluding that the applicant was a fit carrier to be granted the additional authority requested. It should perhaps be noted, as pointed out in the Commission's brief, that if the applicant had been found unfit to have the additional rights, it would also be unfit to hold any rights at all. Since the findings of the Commission were supported by substantial evidence with rational probative force, they should not be disturbed: *Hutchison v. Pa. P. U. C.*, 168 Pa. Superior Ct. 319, 77 A. 2d 744.

Order affirmed.

---

DISSENTING OPINION BY RHODES, P. J.:

I am obliged to file this dissent to the majority opinion notwithstanding its alluring appeal.

The grant of additional authority to the applicant on this record was, in my opinion, a manifest abuse of discretion on the part of the commission; and it is an abuse of judicial authority to affirm the commission's order. It rewards an applicant which has repeatedly and willfully violated the law, and which in fact openly defies any lawful regulation.

This Court should not give its approval to the grant of additional benefits to one so obviously unfit to have them.

Robert D. Young, president of the applicant company and holder of all of its stock except one share,

admitted that his company transported articles which it had no authority to haul, and that it hauled them "without regard to the origin and without regard to the destination." In addition it was admitted that the commission prosecuted applicant for illegal operations three times within the eight months preceding the hearing. The witness testified: "Q. Now, how many times were you prosecuted in Pennsylvania for illegal operations? A. Two or three, three I think it was. Q. And do you know when you were prosecuted? A. Oh, I'd say it was within the last eight months." Notwithstanding these prosecutions, Young continued the illegal operations, and at the time of the hearing applicant was still engaged in unauthorized transportation.[1] If his defiant attitude was not already apparent, Young dispelled all doubts later in the hearing. When asked what he planned to do in the event the application was approved and he received a request to render service for which he was not certified, Young answered: "A. If it is approved, I will go home and be a good boy and operate legal—until then I'll operate illegal." Under these circumstances, it is absurd for the commission to conclude that Young was operating under a bona fide "misunderstanding" of the extent of his rights; and his unretracted declaration cannot be minimized by the examiner's apologetic observation.

I recognize that the fitness of an applicant is a matter primarily for the commission. *Arrow Carrier*

---

[1] The witness Young testified: "Q. However, at the time you signed that application, you were engaging and you still are engaging in the transportation for which you have been . . . [prosecuted] three times, isn't that right? A. Right."

Applicant also attempted to avoid the limits of its certificate by "leasing" its equipment to the shippers. This was an obvious subterfuge and cannot remove the taint of illegality.

*Corporation v. Public Service Commission*, 120 Pa. Superior Ct. 570, 575, 182 A. 711. But the commission's conclusion of fitness must be supported by substantial evidence, and its discretion may not be exercised capriciously or arbitrarily. *Highway Express Lines, Inc., v. Pennsylvania Public Utility Commission*, 161 Pa. Superior Ct. 98, 99, 54 A. 2d 109. The commission is bound to scrutinize the fitness of an applicant. *Byham v. Pennsylvania Public Utility Commission*, 165 Pa. Superior Ct. 253, 258, 67 A. 2d 626. Persistent flouting and defiance of the law bear directly on an applicant's fitness. See *Hubert v. Public Service Commission*, 118 Pa. Superior Ct. 128, 131, 180 A. 23. The commission after considering the evidence may not simply ignore it particularly where, as here, the unfitness appears from the admissions and contemptuous statements of the applicant. The excuse, accepted by the commission and approved by the majority of this Court, that applicant misread his certificate concerning "Bethlehem Steel in Bethlehem" taxes one's credulity. Aside from its obvious absurdity, it still does not excuse or explain the operation outside the one hundred mile limit prescribed in the certificate. A certified carrier is bound by the plain language of the certificate.

Our statement in *Lancaster Transportation Company v. Pennsylvania Public Utility Commission*, 181 Pa. Superior Ct. 129, 138, 139, 124 A. 2d 380, 385, is directly applicable: "On the other hand, where the violation is one resulting from a deliberate disregard of the certificate limitations or the law, then, of course, the wrongdoer should not profit from his own deliberate wrong." The case of *Cage v. Public Service Commission*, 125 Pa. Superior Ct. 330, 336, 337, 189 A. 896, quoted by the majority, does not support its conclusion. In that case there was no open, willful,

deliberate, or contemptuous defiance of the law as here.

On this unprecedented record applicant should not be granted a substantial extension of its rights.[2] *Schuylkill Valley Lines, Inc. v. Pennsylvania Public Utility Commission,* 137 Pa. Superior Ct. 101, 110, 8 A. 2d 487. Acceptance of this record for that purpose is tantamount to sanctioning open and inexcusable defiance of the law, and establishes an unfortunate precedent in a period when lawlessness seems to be taken more or less as a matter of course.

Judge HIRT joins in this dissent.

---

[2] Commissioners Houck and Sharfsin voted to deny the application.